# United States Court of Appeals
# for the Federal Circuit

---

**LEONARD A. SISTEK, JR.,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2019-1168

---

Petition for review of the Merit Systems Protection Board in No. DE-1221-18-0100-W-1.

---

Decided: April 8, 2020

---

ANDREW BAKAJ, Mark S. Zaid, P.C., Washington, DC, argued for petitioner.

STEVEN MICHAEL MAGER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOSEPH H. HUNT, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.

---

Before DYK, TARANTO, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Petitioner Leonard Sistek, Jr. appeals the final decision of the Merit Systems Protection Board denying corrective action in his claim filed under the Whistleblower Protection Act. Mr. Sistek, now retired, was a director at the Department of Veterans Affairs who made multiple protected disclosures over the course of several years. He alleged that certain individuals at the agency launched an investigation against him in retaliation for his whistleblowing activities, ultimately resulting in a letter of reprimand filed against him. The Board denied corrective action for the allegedly retaliatory investigation based on its view that a retaliatory investigation, in and of itself, does not qualify as a personnel action within the meaning of the WPA. For the reasons explained below, we affirm the Board's decision.

## BACKGROUND

### I

In April 2011, Mr. Sistek was appointed to a director role at the VA's Chief Business Office Purchased Care in Denver, Colorado. While serving in that role, Mr. Sistek made several protected disclosures to the VA's Office of the Inspector General (OIG) questioning various financial practices at the VA. For example, Mr. Sistek raised concerns in August 2012 regarding the "parking" of certain appropriated funds. Mr. Sistek also contacted the OIG in October 2013 regarding certain perceived contractual anomalies.

During a conference call with agency staff on January 17, 2014, Mr. Sistek expressed his concerns regarding the VA's use of certain funds that were purportedly appropriated for a different purpose. Mr. Sistek's second-line supervisor, Cynthia Kindred, participated in that call. Shortly thereafter, Ms. Kindred appointed an Administrative Investigation Board (AIB) to investigate alleged misconduct in the organization, including certain allegations

relating to inappropriate relationships with subordinate staff.

The AIB interviewed Mr. Sistek several weeks later on February 4, 2014. According to Mr. Sistek, he received notification that he would be interviewed by the AIB as a witness, and he first realized that he was a subject of the investigation during questioning by the AIB members. Shortly after the interview, Mr. Sistek sent an email to the OIG expressing concern that he was being subjected to an investigation in retaliation for his prior whistleblowing activities. On the following day, Ms. Kindred formally added Mr. Sistek as a subject of the investigation.

On April 21, 2014, the AIB issued a report detailing its findings regarding a number of allegations, among them a "failure to act and/or investigate allegations of a hostile work environment" by the management team, which included Mr. Sistek. J.A. 64, 73–76. The investigation culminated in a July 2014 report concluding that Mr. Sistek had failed to properly report information and allegations regarding an inappropriate sexual relationship between a director and that director's subordinate staff member. The July 2014 report recommended that Mr. Sistek receive "an admonishment or reprimand" on that basis. J.A. 85. In August 2014, Mr. Sistek's immediate supervisor, Lori Amos, issued a letter of reprimand consistent with that recommendation.

Mr. Sistek filed a formal grievance in response to the letter of reprimand. The assigned grievance examiner issued a report in December 2014 substantiating the conduct supporting the reprimand and recommending that Mr. Sistek's grievance and requested relief be denied. In January 2015, Ms. Amos's supervisor Stan Johnson rescinded the letter of reprimand and expunged it from Mr. Sistek's record. Mr. Johnson did not provide a reason for the rescission and expungement.

In March 2015, the OIG confirmed that the concerns raised by Mr. Sistek on the conference call in January 2014 were justified: the VA had violated appropriations law by improperly reallocating certain funds. In June 2015, the OIG confirmed that the "parking" of appropriated funds, as flagged by Mr. Sistek in August 2012, was unauthorized. Mr. Sistek retired from the VA in January 2018.

## II

Following the issuance of the April 2014 report from the AIB investigation, Mr. Sistek filed a complaint with the U.S. Office of Special Counsel (OSC) alleging whistleblower reprisal based on several personnel actions, including the letter of reprimand. After the OSC issued a closure letter, Mr. Sistek filed an individual right of action appeal with the Board, alleging that certain VA officials had retaliated against him for certain disclosures and activities protected under the Whistleblower Protection Act.

Before the Administrative Judge, Mr. Sistek originally identified four reviewable personnel actions, including the letter of reprimand. The Administrative Judge later added retaliatory investigations to the list of alleged personnel actions. The Administrative Judge ordered the parties to submit supplemental briefing on whether the alleged retaliatory investigations could qualify for corrective action under the WPA. In his supplemental brief, Mr. Sistek argued that the investigation at issue merited corrective action because it was launched against him in retaliation for his whistleblowing, resulting in the letter of reprimand and the creation of a hostile work environment.

After evaluating Mr. Sistek's various whistleblower claims, the Administrative Judge declined to order any corrective action in favor of Mr. Sistek. *See generally Sistek v. Dep't of Veterans Affairs*, No. DE-1221-18-0100-W-1, 2018 MSPB LEXIS 3010 (M.S.P.B. Aug. 8, 2018) (*Decision*). Relevant here, the Administrative Judge determined that a retaliatory investigation, in and of itself, does

not qualify as a personnel action eligible for corrective action under the WPA.  And when evaluating the remainder of Mr. Sistek's whistleblower claims, the Administrative Judge did not consider the allegedly retaliatory investigation any further.  For example, the Administrative Judge considered only Ms. Amos's knowledge—and not Ms. Kindred's knowledge even though she initiated the investigation—in evaluating Mr. Sistek's claim based on the letter of reprimand.  The Administrative Judge rejected that claim after finding that Ms. Amos, the official who issued the reprimand, had no actual or constructive knowledge of Mr. Sistek's protected disclosures to the OIG.

The Administrative Judge's initial decision became the final decision of the Board.  Mr. Sistek now petitions for review.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

On appeal, Mr. Sistek challenges the Board's final decision denying corrective action for the allegedly retaliatory investigation.[1]    The Board reasoned that a retaliatory

---

[1]    Mr. Sistek also presents, for the first time on appeal, an argument that the allegedly retaliatory investigation separately violates 5 U.S.C. § 2302(b)(10).    That argument is forfeited for failure to present it to the Administrative Judge in the first instance.  *Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("A party in an MSPB proceeding must raise an issue before the administrative judge if the issue is to be preserved for review in this court.").  Mr. Sistek further challenges certain witness credibility determinations made by the Administrative Judge, but we do not find those arguments persuasive—not least because such determinations are "virtually unreviewable" on appeal.  *King v. Dep't of Health & Human Servs.*, 133 F.3d 1450, 1453 (Fed. Cir. 1998) (quoting *Clark v. Dep't of the Army*, 997 F.2d 1466, 1473 (Fed. Cir. 1993)).

investigation, in and of itself, is not a personnel action within the meaning of the Whistleblower Protection Act. We review the Board's interpretation of a statute de novo, *Marano v. Dep't of Justice*, 2 F.3d 1137, 1141 (Fed. Cir. 1993), and the Board's factual determinations for substantial evidence, *McGuffin v. Soc. Sec. Admin.*, 942 F.3d 1099, 1107 (Fed. Cir. 2019) (citing *McMillan v. Dep't of Justice*, 812 F.3d 1364, 1371 (Fed. Cir. 2016)). We may reverse the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The petitioner bears the burden of establishing reversible error in the Board's final decision. *Fernandez v. Dep't of the Army*, 234 F.3d 553, 555 (Fed. Cir. 2000) (citing *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998)). For the reasons that follow, we conclude that Mr. Sistek has only identified harmless errors in the Board's decision. Accordingly, we affirm.

I

For the Board to determine that an agency action merits corrective action under the Whistleblower Protection Act, the Board must first find that (1) there was a disclosure or activity protected under the WPA; (2) there was a personnel action authorized for relief under the WPA; and (3) the protected disclosure or activity was a contributing factor to the personnel action. *See* 5 U.S.C. § 1221(e)(1); *see also Piccolo v. Merit Sys. Prot. Bd.*, 869 F.3d 1369, 1371 (Fed. Cir. 2017). The petitioner must prove these elements by a preponderance of the evidence. *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). Once the petitioner has done so, the agency may rebut the petitioner's prima facie case of reprisal with "clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Id.* (quoting 5 U.S.C. § 1221(e)(2)).

Thus, a "personnel action," as defined by the WPA, is a predicate for a whistleblower appeal. Only upon proof of a qualifying personnel action may a claimant seek corrective action from the Board. *See* 5 U.S.C. § 1221(a). The WPA defines the set of qualifying personnel actions at 5 U.S.C. § 2302(a)(2)(A). That section of the statute lists eleven specific personnel actions—including, for example, "an appointment," "a performance evaluation," and "a decision concerning pay"—followed by a catch-all provision: "any other significant change in duties, responsibilities, or working conditions." *Id.* § 2302(a)(2)(A)(i)–(xii). Noticeably absent from the list, however, is any mention of a "retaliatory investigation," or indeed, any investigation at all.

The statutory language indicates that Congress intentionally excluded retaliatory investigations from the scope of personnel actions authorized for relief under the WPA. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal alterations omitted) (first quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972); then citing *United States v. Wooten*, 688 F.2d 941, 950 (4th Cir. 1982)). Section 2302(a)(2)(A) does not expressly address "investigations" or "retaliatory investigations," but other sections do. Elsewhere, the WPA provides that the Board may order corrective action that includes "fees, costs, or damages reasonably incurred due to an agency investigation" that is "commenced, expanded, or extended in retaliation" for a protected disclosure or activity—i.e., a retaliatory investigation. 5 U.S.C. §§ 1214(h), 1221(g)(4). Based on this asymmetry in the statutory text, we infer that Congress acted purposely in excluding retaliatory investigations from the set of qualifying personnel actions specified by § 2302(a)(2)(A).

The legislative history supports our interpretation of the statutory text. Congress amended the WPA with the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465 (2012). The Senate Report for the WPEA demonstrates that Congress was aware of the harassing character of retaliatory investigations, yet expressly declined to add them to the list of qualifying personnel actions. The report first acknowledges that the "retaliatory investigation of whistleblowers may be a prohibited form of harassment." S. REP. NO. 112-155, at 20 (2012) (discussing remarks of House Civil Service Subcommittee Chairman Frank McCloskey during consideration of the 1994 amendments to the WPA). The report then explains that the drafters of the WPEA declined to insert an express provision covering retaliatory investigations out of concern for chilling routine investigations. *See id.* at 21. Instead, the drafters of the WPEA sought to chart a middle course. Even as they declined to add retaliatory investigations to the list of qualifying personnel actions, the drafters "create[d] an additional avenue for financial relief *once an employee is able to prove a claim under the WPA*, if the employee can further demonstrate that an investigation was undertaken in retaliation for the protected disclosure." *Id.* (emphasis added). In doing so, the drafters underscored that:

> This provision of the legislation does not in any way reduce current protections against retaliatory investigations, and it would retain the existing standard for showing that a retaliatory investigation or other supervisory activity rises to the level of a prohibited personnel practice forbidden under the WPA.

*Id.* at 21–22. The drafters expressly confirmed their intent that the Board's foundational decision in this area, *Russell v. Dep't of Justice*, 76 M.S.P.R. 317 (1997), would remain the "governing law" following the 2012 amendments. *Id.* at 21.

Based on the plain language of the statute, as further supported by the legislative history, we conclude that retaliatory investigations, in and of themselves, do not qualify as personnel actions under the WPA. Instead, the statute provides that a retaliatory investigation may provide a basis for additional corrective action if raised in conjunction with one or more of the qualifying personnel actions specified by § 2302(a)(2)(A).

## II

Mr. Sistek acknowledges the statutory text and legislative history of the Whistleblower Protection Act discussed above, but insists that the allegedly retaliatory investigation at issue in this case satisfies the threshold requirements of the WPA for two distinct reasons. First, Mr. Sistek contends that the allegedly retaliatory investigation qualifies as a personnel action under the WPA's catch-all provision. Second, Mr. Sistek asserts that a retaliatory investigation is independently actionable based on the Board's decision in *Russell*, 76 M.S.P.R. 317. We address each argument in turn. We find neither argument availing to Mr. Sistek on the record before us.

## A

Mr. Sistek first argues that the allegedly retaliatory investigation at issue qualifies as a personnel action under the WPA's catch-all category of "any other significant change in . . . working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). Before the Board, Mr. Sistek contended that the retaliatory investigation, either on its own or in conjunction with the letter of reprimand, created a hostile work environment that satisfies the catch-all provision. As the Government concedes, the Board failed to address this argument in the final decision. Oral Arg. at 31:58–32:49, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1168.mp3. On these facts, however, we conclude that the Board's failure to address Mr. Sistek's argument was harmless.

To be sure, a retaliatory investigation, either on its own or as part of a broader set of circumstances, may qualify as a personnel action if it rises to the level of a "significant change in . . . working conditions." The plain language of the statute requires as much—so long as the change in working conditions is *significant*. *See Smith v. Dep't of the Army*, No. SF-1221-12-0349-W-6, 2017 MSPB LEXIS 3445, at \*51–52 (M.S.P.B. Aug. 7, 2017) (collecting cases evaluating significance of change). Consistent with the statutory text, the Senate Report for the WPEA amendments expressly acknowledges that investigations may qualify as personnel actions "if they result in a significant change in job duties, responsibilities, or working conditions." S. REP. NO. 112-155, at 20. The Government conceded at oral argument that there may be extreme circumstances in which an investigation alone could constitute a significant change in working conditions. *See* Oral Arg. at 18:11–19:20 (discussing hypothetical in which an employee is interviewed for an hour every day). Or, as the Board itself has held, a retaliatory investigation could contribute toward the creation of a hostile work environment that is actionable as a significant change in working conditions. *Smith*, 2017 MSPB LEXIS 3445, at \*52 (citing *Savage v. Dep't of the Army*, 122 M.S.P.R. 612, 627 (2015)).

Mr. Sistek failed to establish a significant change of working conditions here, however. In support of his claim, Mr. Sistek only presented facts that would apply to almost any investigation that results in a reprimand. *See, e.g.*, Oral Arg. at 16:59–17:39 (identifying only a single interview and a letter of reprimand). That Mr. Sistek was interviewed once and had the stigma and fear associated with every investigation does not make this investigation a significant change in working conditions. Nor does the fact that the investigation identified misconduct that resulted in a letter of reprimand—a letter that was later rescinded and expunged, no less. Congress declined to include retaliatory investigations within the scope of

personnel actions out of concern for chilling routine investigations, S. REP. NO. 112-155, at 21, so it cannot be that the catch-all provision may be satisfied by conduct that would apply to almost any routine investigation. To hold otherwise would allow the exception to swallow the rule.

B

Mr. Sistek next argues that the Board was compelled to address the allegedly retaliatory investigation by the holding of *Russell*, 76 M.S.P.R. 317—the decision expressly left as "governing law" by the drafters of the WPEA amendments. S. REP. NO. 112-155, at 21. Mr. Sistek reads *Russell* to establish that the Board may independently consider a separate claim of "retaliation by investigation" where there is a nexus between an investigation and a subsequent personnel action. Appellant's Br. 22–24.

We do not read *Russell* so broadly. In *Russell*, an employee brought a WPA claim based on his demotion, which undisputedly qualified as a personnel action under the WPA. 76 M.S.P.R. at 320–22. The employee was demoted following several investigations that uncovered certain misconduct by that employee. *See id.* The investigations were initiated by officials with knowledge of the employee's prior whistleblowing activity. *Id.* at 323–24. Applying the WPA framework, the agency sought to rebut the employee's prima facie case of reprisal by arguing that the agency would have taken disciplinary action against the employee regardless of the employee's whistleblowing activities because the identified misconduct was independently sanctionable. *See id.* at 322–24. The Board disagreed, explaining that it must "look[] at where the investigation had its beginnings." *Id.* at 324 (citing *Geyer v. Dep't of Justice*, 70 M.S.P.R. 682, 689 (1996), *aff'd*, 116 F.3d 1497 (Fed. Cir. 1997)). The Board observed that the "investigations were initiated because of allegations about the [employee] made by one of the two subjects of the

[employee's] protected disclosure." *Id.* The Board reasoned that:

> When, as here, *an investigation is so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate*, and the agency does not show by clear and convincing evidence that the evidence would have been gathered absent the protected disclosure, then the appellant will prevail on his affirmative defense of retaliation for whistleblowing. That the investigation itself is conducted in a fair and impartial manner, or that certain acts of misconduct are discovered during the investigation, does not relieve an agency of its obligation to demonstrate by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure.

*Id.* (emphasis added) (citing 5 U.S.C. § 1221(e)(2)). To hold otherwise, the Board continued, would sanction the use of "selective investigations" as a "purely retaliatory tool." *Id.* at 325. Because the investigations at issue gave rise to all the charges underlying the employee's demotion, they were sufficiently closely related to merit consideration in conjunction with the demotion itself. *See id.* After considering evidence relating to the origin of the investigation, the Board ordered corrective action based on its conclusion that the agency had failed to rebut the employee's prima facie case of reprisal. *Id.* at 327–28.

We agree with the holding of *Russell* that, in the WPA context, the Board should "consider evidence regarding the conduct of an agency investigation when the investigation was so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate against an employee for whistleblowing activity." *Id.* at 323–24 (first citing *Geyer*, 70 M.S.P.R. at 688; then citing *Mongird v. Dep't of the Navy*, 33 M.S.P.R. 504, 507

(1987)).  We reject Mr. Sistek's view that *Russell* somehow makes retaliatory investigations independently actionable under the WPA separate and apart from a qualifying personnel action.

Here, the holding of *Russell* obligated the Board to consider the allegedly retaliatory investigation as part of its evaluation of the letter of reprimand.  In its briefing to the Board, the Government acknowledged that "the Administrative Judge could potentially examine the conduct of the AIB in determining the propriety of the accepted personnel action—the reprimand."  J.A. 132.  The Board also acknowledged the holding of *Russell* in its final decision. *See Decision*, 2018 MSPB LEXIS 3010, at *23–24 (citing *Russell*, 76 M.S.P.R. at 323–24).  Yet, as the Government conceded at oral argument, the Board nevertheless failed to apply *Russell* in evaluating the letter of reprimand. *See* Oral Arg. at 32:50–33:44.  That was error, but for the reasons that follow, we conclude that the Board's error was harmless.

Mr. Sistek failed to establish any reason why the outcome could have been different had the Board properly considered the allegedly retaliatory investigation in conjunction with the letter of reprimand, as *Russell* instructs.  The facts of this case are distinguishable from *Russell* at least because here there is no evidence that the official who initiated the allegedly retaliatory investigation had knowledge of any protected disclosures.  Indeed, the Board specifically found that Ms. Kindred had no actual or constructive knowledge of Mr. Sistek's August 2012 and October 2013 protected disclosures, and Mr. Sistek did not dispute that finding on appeal.  Although the Board did not account for Ms. Kindred's potential knowledge of the February 2014 protected disclosure (i.e., Mr. Sistek's email to the OIG following the AIB interview), Mr. Sistek did not allege any such knowledge in his briefing, much less explain how Ms. Kindred's knowledge of that protected

disclosure could have had any impact on the Board's evaluation of the letter of reprimand.

At oral argument, counsel for Mr. Sistek presented a new theory of reprisal based on the presence of certain individuals on the investigative board. Oral Arg. at 10:32–12:13. As counsel conceded at oral argument, that theory was not presented in Mr. Sistek's opening brief before this court. *Id.* at 38:11–26. The argument is therefore waived. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived." (citing *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1320–21 n.3 (Fed. Cir. 2005))).[2] On the merits, the argument also fails. Ms. Kindred's decision to assign certain individuals to the AIB necessarily took place before Mr. Sistek's February 2014 protected disclosure because that disclosure—an email to the OIG about the investigation—followed his interview by the AIB. Mr. Sistek does not allege that the membership of the investigative board changed from the time of the interview to the issuance of the investigative report implicating him, nor does that appear to be the case based on the record before us. Thus, Mr. Sistek failed to establish how any knowledge that Ms. Kindred may have had of the February 2014 protected disclosure could have had any bearing on the membership of the investigative board.

We find no basis in the record on which the Board could have found differently had it properly considered, consistent with *Russell*, the allegedly retaliatory investigation as part of its evaluation of the letter of reprimand. The Board's failure to do so was therefore harmless.

---

[2]    Mr. Sistek does not appear to have presented this theory to the Administrative Judge either, so the argument is also forfeited on that basis. *Bosley*, 162 F.3d at 668.

CONCLUSION

We have considered the parties' other arguments, and we do not find them persuasive.  For the foregoing reasons, we affirm the Board's final decision.

**AFFIRMED**

COSTS

No costs.