## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

NORMAN R. STONER,
            Appellant,

            v.

DEPARTMENT OF
    TRANSPORTATION,
            Agency.

DOCKET NUMBER
CH-1221-14-0418-W-1

DATE: February 27, 2023

## THIS ORDER IS NONPRECEDENTIAL[1]

<u>James P. Baker</u>, Esquire, Springfield, Illinois, for the appellant.

<u>Russell B. Christensen</u>, Esquire, and <u>Mindy A. Kaiden</u>, Esquire,
    Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

### REMAND ORDER

¶1      The appellant has filed a petition for review and the agency has filed a cross petition for review of the initial decision, which denied the appellant's request for corrective action in this individual right of action (IRA) appeal. For the reasons

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

set forth below, we GRANT the petition for review and DENY the cross petition for review, VACATE the initial decision, and REMAND the appeal to the Central Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The appellant was the Division Administrator (DA) for the Illinois Division of the agency's Federal Highway Administration (FHWA). Initial Appeal File (IAF), Tab 1 at 1, 11, Tab 18 at 24 of 38. Historically, the Illinois Division did not approve the use of project labor agreements (PLAs), which are collective bargaining agreements between procuring organizations (such as state departments of transportation) and labor organizations that establish the terms and conditions of employment for specific construction projects. IAF, Tab 23 at 123; Hearing Transcript, Day 1 (HT1) at 230 (testimony of the appellant). On February 6, 2009, President Obama signed an Executive Order that encouraged the use of PLAs in connection with large-scale construction projects,[2] provided the use was consistent with law. IAF, Tab 23 at 123-25. Prior to the Order, agencies were prohibited from allowing states to require that contractors use PLAs on projects receiving Federal funds. *Id.* at 119. The Order reversed this prohibition. *Id.* at 119-20.

¶3 In July of 2009, President Obama appointed a new FHWA Administrator. Hearing Transcript, Day 2 (HT2) at 359 (testimony of the FHWA Administrator), 438 (testimony of the appellant's first-level supervisor). The FHWA Administrator, Deputy Administrator, and Office of the Chief Counsel had authority over the agency's review of PLAs. HT1 at 79 (testimony of the appellant's second-level supervisor). On May 7, 2010, the FHWA Administrator issued interim guidance on the use of PLAs. IAF, Tab 23 at 119-22. This

---

[2] The Executive Order defined the term "large-scale construction project" as "a construction project where the total cost to the Federal Government is $25 million or more." IAF, Tab 23 at 123.

guidance assigned to the DAs the role of approving state use of PLAs. *Id.*; HT2 at 412 (testimony of the FHWA Administrator). Under the guidance, DAs were to ensure that the use of a PLA for a particular project complied with all the requirements of Titles 23 and 49 of the U.S. Code and Code of Federal Regulations, including FHWA's prohibition on one state discriminating against the employment of labor from any other state. IAF, Tab 23 at 121; 23 C.F.R. § 635.117(b). The interim guidance also directed division offices to ensure that PLAs were used and structured in a manner so as to be "effective in securing competition," as required by 23 U.S.C. § 112, which governs the process for awarding Federal-aid highway contracts. IAF, Tab 23 at 121.

¶4        In 2009 and 2010, the appellant, in coordination with FHWA's Office of Chief Counsel, was responsible for reviewing and approving requests by the Illinois Department of Transportation (IDOT) to use PLAs on Federal-aid highway projects. IAF, Tab 1 at 11-12, Tab 18 at 28 of 38; HT1 at 81-82, 137 (testimony of the appellant's second-level supervisor). Following the May 7, 2010 interim guidance, the FHWA Administrator and Deputy Administrator centralized the approval process at FHWA headquarters. IAF, Tab 20 at 21; HT1 at 239-40 (testimony of the appellant); HT2 at 360, 413-14 (testimony of the FHWA Administrator). Although the Illinois Division was no longer responsible for approving PLA requests, it continued to receive them, and the appellant provided recommendations and analysis regarding the requests before referring them to FHWA's Deputy Administrator. HT1 at 240-41 (testimony of the appellant).

¶5        The number of PLAs in Illinois increased dramatically after the PLA approval process was centralized, *see* IAF, Tab 23 at 190-99, and the appellant became concerned that IDOT was using PLAs to thwart competitive bidding and discriminate against out-of-state labor, HT1 244-48 (testimony of the appellant). On June 20, 2011, he met with two agents from the agency's Office of Inspector General (OIG) and alleged various improprieties regarding implementing PLAs in

Illinois. *Id.* at 8-9, 13 (testimony of an OIG agent), 249-51 (testimony of the appellant); IAF, Tab 23 at 159-63. In particular, he alleged that State Government, organized labor, and the Federal Government were conspiring to use PLAs in Illinois to undermine competitive bidding on Federal-aid highway projects, as required by 23 U.S.C. § 112(a) and (b), by preventing nonunion companies from working on large-scale construction projects. HT1 at 14 (testimony of an OIG agent); IAF, Tab 1 at 13, Tab 23 at 159. He further alleged that PLAs were being used to prevent contractors outside the State of Illinois from bidding on Federal-aid projects, effectively discriminating against out-of-state labor in violation of 23 C.F.R. § 635.117(b). HT1 at 21-22 (testimony of an OIG agent); IAF, Tab 1 at 13, Tab 23 at 160-61.

¶6      The appellant continued to provide the OIG with information during its investigation. HT1 at 15 (testimony of an OIG agent), 252 (testimony of the appellant); IAF, Tab 45 at 77-78. In the meantime, on July 19, 2012, the appellant's second-level supervisor informed the appellant that he was reassigning him to the DA position in Indiana because a change in leadership in Illinois was necessary due to "increasing tensions and issues" between the appellant and the Illinois Division's stakeholders. IAF, Tab 18 at 28-30 of 38; HT1 at 107-09 (testimony of the appellant's second-level supervisor). The appellant's second-level supervisor testified that he decided to reassign the appellant because of feedback the second-level supervisor received "over an extended period of time" from (1) the FHWA Administrator regarding FHWA's "relationships with [its] partners and stakeholders in Illinois" and (2) the appellant's first-level supervisor about the appellant's "leadership style." HT 108-09 (testimony of the appellant's second-level supervisor). The appellant's request for reconsideration of this decision was unsuccessful, and he filed an administrative grievance of his reassignment. IAF, Tab 18 at 7-15 of 20, 5-15 of 28, Tab 23 at 188-89.

¶7    The individual assigned by the agency as the fact-finder in connection with the appellant's grievance recommended to the appellant's second-level supervisor that he not reassign the appellant. IAF, Tab 26 at 16-19. He noted that the agency's action was inconsistent with the appellant's past performance evaluations, which were positive; the appellant was not provided with a formal opportunity to improve his perceived performance deficiencies; the decision to reassign him to another leadership position contradicted the stated reasons for his reassignment; and his reassignment may have been "politically motivated." *Id.* On December 20, 2012, the appellant's second-level supervisor denied the grievance but laterally reassigned the appellant to a position as Senior Advisor to the Director of Field Services North, effective January 13, 2013. IAF, Tab 18 at 22, 30 of 38, 17-18 of 28. This position allowed the appellant to remain in Illinois. *Id.* at 22-24 of 38.

¶8    The appellant then filed a complaint with the Office of Special Counsel (OSC), alleging that the agency reassigned him in retaliation for his disclosures to the OIG. IAF, Tab 33 at 21-69. After OSC issued a close-out letter advising the appellant of his right to file an appeal with the Board, *id.* at 95-96, the appellant timely filed this IRA appeal, IAF, Tab 1.

¶9    On February 11, 2014, the OIG completed a report of investigation regarding the appellant's allegations. IAF, Tab 45 at 74-82. Three days later, it issued a letter to the new FHWA Illinois DA stating that it was closing its investigation into the complaint, which it identified as anonymous, because the U.S. Department of Justice had declined to pursue any civil or criminal actions in connection with the matter. IAF, Tab 33 at 16-17. The OIG stated in this letter that "interviews and analyses were inconclusive" regarding the allegations of misuse of PLAs. *Id.* at 17. It went on to indicate that it had uncovered evidence that the IDOT had suspended a nonunion contractor based "solely on information from an Illinois union rather than relying on the IDOT's audit report, which had no findings." *Id*.

¶10 Following a hearing, the administrative judge issued an initial decision in which she found that the Board has jurisdiction over the appeal but denied the appellant's request for corrective action. IAF, Tab 54, Initial Decision (ID) at 8-11, 23. The administrative judge found that the appellant made a protected disclosure under the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465; ID at 12-14, but failed to prove that his disclosure was a contributing factor in the decision to reassign him, ID at 14-19. The administrative judge further found, however, that if the appellant had met his burden of proving contributing factor, he would have been entitled to corrective action because the agency failed to prove by clear and convincing evidence that it would have reassigned him absent his whistleblowing activity. ID at 20-22.

¶11 On petition for review, the appellant challenges the administrative judge's finding that he did not prove the contributing factor element of his claim. Petition for Review (PFR) File, Tab 1. In particular, he alleges that the administrative judge improperly credited the testimony of the agency officials involved in his reassignment, who denied knowledge of his disclosures. *Id.* at 17-21. He also argues that the administrative judge erred by treating the knowledge/timing test as the exclusive method for proving contributing factor, *id.* at 12, and he asserts that he met the burden of proving contributing factor based on circumstantial evidence, *id.* at 13-16, 21-26. In addition, he contends that the administrative judge abused her discretion by denying his request to call various witnesses. *Id.* at 26-27.

¶12 The agency has filed a response to the petition for review and a cross petition for review. PFR File, Tabs 3-4. It asserts that the appellant failed to make a protected disclosure under the Whistleblower Protection Act (WPA) or the WPEA, and it further contends that the administrative judge improperly applied the WPEA retroactively. PFR File, Tab 3 at 5, 11-26. The appellant has

filed a response to the cross petition for review[3] and a reply to the agency's response to the petition for review. PFR File, Tabs 6-7.

## ANALYSIS

The administrative judge correctly found that the appellant's disclosures to the OIG were protected.

¶13     Because the administrative judge properly concluded that jurisdiction exists in this matter, the appellant is required to establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 12 (2015); *see* 5 U.S.C. § 1221(e)(1). To establish that he made a protected disclosure, the appellant must demonstrate by preponderant evidence that he disclosed information that he reasonably believed evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial or specific danger to public health or safety. 5 U.S.C. § 2308(b)(8)(A)-(B); *Mithen v. Department of Veterans Affairs*, 119 M.S.P.R. 215, ¶ 13 (2013). If the appellant makes out a prima facie case, then the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2); *Mastrullo*, 123 M.S.P.R. 110, ¶ 12.

¶14     As previously noted, in its cross petition for review, the agency argues that the administrative judge improperly applied the WPEA retroactively. PFR File, Tab 3 at 5, 22-26; ID at 9-11. It further asserts that the appellant's disclosures to the OIG were not protected under the prior WPA because he made them during the normal course of his duties. *Id.* at 6, 11-17. We disagree.

---

[3] Given our finding below that the appellant made a protected disclosure, we need not address his assertion that the agency is estopped from arguing his disclosures are not protected. PFR File, Tab 7 at 6-7.

¶15        The WPEA was signed into law on November 27, 2012, with an effective date of December 27, 2012.  Pub. L. No. 112-199, 126 Stat. 1465.  Section 101(b) of the WPEA provided, as relevant here, that a disclosure made by an employee in the "normal course of [his] duties" was not excluded from protection if the employee could show that "in reprisal for the disclosure" the agency took a personnel action.       126 Stat. at 1466 (codified as amended at 5 U.S.C. § 2302(f)(2)); *see Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶¶ 9, 21 (concluding that the National Defense Authorization Act for 2018, Pub. L. No. 115-91, § 1097(c)(1)(B)(ii), 131 Stat. 1283, 1618, clarified that the slightly higher "in reprisal for" burden set forth in 5 U.S.C. § 2302(f)(2) applies only to employees whose principle job functions are regularly investigating and disclosing wrongdoing).   This case is unusual in that the agency issued the decision reassigning the appellant to the Senior Advisor position before December 27, 2012, but his directed reassignment did not become effective until January 13, 2013.  IAF, Tab 18 at 22 of 38, 17-18 of 28.  However, even before the WPEA was enacted, the U.S. Court of Appeals for the Federal Circuit interpreted the WPA as protecting an employee who reports wrongdoing outside of normal channels.  *Huffman v. Office of Personnel Management*, 263 F.3d 1341, 1354 (2001), *superseded by the WPEA as stated in Schoenig v. Department of Justice*, 120 M.S.P.R. 318, ¶¶ 11-12 (2013); *see Ontivero v. Department of Homeland Security*, 117 M.S.P.R. 600, ¶¶ 16-17 (2012) (finding that an employee's disclosures to agency officials in upper management were protected regardless of whether they were within the normal course of her duties because she did not make them within normal channels).  Here the appellant made the disclosures at issue to the agency's OIG, which was outside of normal channels. HT1 at 248-50 (testimony of the appellant).  Therefore, the administrative judge properly found that the appellant's disclosures were protected.[4]  ID at 9-11.

---

[4] The WPEA also expanded the Board's IRA jurisdiction to include claims of reprisal

¶16     The agency further argues on review, as it did below, that the appellant's disclosures to the OIG were not protected because he did not allege wrongdoing by any Federal employee or entity.  PFR File, Tab 3 at 17-19; IAF, Tab 53 at 12-13.  The administrative judge properly rejected this argument in the initial decision.  ID at 12-14.  Disclosures of wrongdoing by a state entity may constitute protected disclosures when the Federal Government's interests and good name are implicated in the alleged wrongdoing.  *Miller v. Department of Homeland Security*, 99 M.S.P.R. 175, ¶¶ 3, 12-13 (2005).  As previously noted, in his disclosures, the appellant alleged that the approval process for PLA requests in Illinois was contrary to 23 U.S.C. § 112(a) and (b) and 23 C.F.R. § 635.117(b).  Because FHWA was responsible for approving PLA requests, these disclosures implicated the legality of its actions.  IAF, Tab 20 at 21.

¶17     On review, the agency also reiterates its argument from below that the appellant's disclosures were not protected because they merely expressed his disagreement with the agency's policy of encouraging the use of PLAs on Federal-aid highway projects.  PFR File, Tab 3 at 19-22; IAF, Tab 53 at 14-17; *see Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015) (holding that policy disagreements with agency decisions or actions are not protected unless they separately constitute a protected disclosure of one of the categories of wrongdoing listed in 5 U.S.C. § 2302(b)(8)(A)).  The administrative judge correctly rejected this argument in the initial decision, finding that the appellant's objection to the PLA approval process extended beyond a belief that it was "a

---

for a personnel action taken as a result of a prohibited personnel practice described in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  *Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 6 (2014).  Because we agree with the administrative judge's finding that the appellant made protected disclosures over which the Board has IRA jurisdiction, we find it unnecessary to determine whether the Board alternatively has IRA jurisdiction over the appellant's cooperation with the agency's OIG, which is a protected activity under 5 U.S.C. § 2302(b)(9)(C).  *See Colbert*, 121 M.S.P.R. 677, ¶¶ 2, 7 (declining to give retroactive effect to the WPEA's expanded IRA appeal rights over protected activities described in section 2302(b)(9)(A)(i) and (b)(9)(C) when all of the relevant events took place prior to the effective date of the WPEA).

radical departure from former practice," as argued by the agency. ID at 14 (quoting IAF, Tab 53 at 15); PFR File, Tab 3 at 20. Rather, as the administrative judge found, the appellant's allegations concerned violations of Federal laws and regulations regarding the competitive bidding process. ID at 14; *see* 23 U.S.C. § 112; 23 C.F.R. § 635.117. Thus, we find no reason to disturb the administrative judge's finding that the appellant met his burden of proving that his disclosures to the OIG were protected.

The administrative judge correctly found that the appellant failed to prove that his disclosures were a contributing factor in his reassignment under the knowledge/timing test.

¶18      Having found that the appellant proved by preponderant evidence that his disclosures to the OIG were protected, we turn to the question of whether he proved that they were a contributing factor in the agency's decision to reassign him. A protected disclosure is a contributing factor if it in any way affects an agency's decision to take a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). One way to establish contributing factor is the knowledge/timing test. *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd per curiam*, 353 F. App'x 435 (Fed. Cir. 2009). Under that test, an appellant can prove the contributing factor element through evidence showing that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*

¶19      An appellant also may satisfy the knowledge prong of the knowledge/timing test by proving that the official taking the action had constructive knowledge of the protected disclosure, even if the official lacked actual knowledge. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014). An appellant may establish constructive knowledge by showing that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Id.*

¶20      The appellant's second-level supervisor testified that he decided to reassign the appellant based on the feedback of the appellant's immediate supervisor and the FHWA Administrator. HT1 at 110, 116 (testimony of the appellant's second-level supervisor); HT2 at 439-40 (testimony of the appellant's immediate supervisor). The administrative judge found credible the hearing testimony of the appellant's first- and second-level supervisors and of the FHWA Administrator that they did not know about the appellant's disclosure or his involvement with the OIG until after his reassignment. ID at 15-16; HT1 at 169 (testimony of the appellant's second-level supervisor); HT2 at 421-22 (testimony of the FHWA Administrator), 502-03 (testimony of the appellant's immediate supervisor). Applying the factors for resolving credibility issues set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), the administrative judge found that these witnesses "gave unrebutted, forthright, and unequivocal testimony that was consistent and unambiguous regarding their lack of knowledge about the appellant's OIG complaint." ID at 15.

¶21      The appellant challenges these findings on review, reiterating his argument from below that these witnesses were not credible because of inconsistencies in their testimony. PFR File, Tab 1 at 17-19; IAF, Tab 52 at 36-40. More specifically, the appellant asserts that his second-level supervisor's testimony that he received continuous feedback from the Administrator—concerning congressional and stakeholder complaints about the appellant over an extended period of time—is inconsistent with the Administrator's testimony that he received, and passed on, only three such complaints.[5] PFR File, Tab 1 at 17-21;

---

[5] The appellant also argues that his second-level supervisor contradicted himself by testifying at one point that he received feedback from the appellant's immediate supervisor prior to making the reassignment decision, and at a different point that he did not have any discussions with her during the relevant timeframe. PFR File, Tab 1 at 19 (citing HT1 at 110-112 (testimony of the appellant's second-level supervisor)). However, our review of the testimony reveals that the appellant's second-level supervisor consistently testified that he received feedback from the appellant's

HT1 at 86-89, 108-10 (testimony of the appellant's second-level supervisor); HT2 at 396-402 (testimony of the FHWA Administrator); IAF, Tab 52 at 37-38.

¶22     The administrative judge addressed this argument in the initial decision and found that any differences were "attributable more to the length of time between the events in question and the hearing, than to any attempt at deception or lack of forthrightness."[6]  ID at 15.  The appellant challenges this finding on review, arguing that it is unlikely that his second-level supervisor would "suffer a memory lapse" during the hearing because FHWA attorneys and human resources professionals previously coached the supervisor for a September 2012 meeting he had with the appellant to explain the reason for his reassignment.  PFR File, Tab 1 at 20.

¶23     The Board defers to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board overturns such determinations only when it has "sufficiently sound" reasons for doing so.  *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).  Here, the administrative judge's credibility determinations were based explicitly on her observing and assessing the agency officials' demeanor during the hearing.  ID at 15-16.  While the appellant disagrees with the credibility determinations, we find his challenges are not sufficiently sound to overturn them.  The inconsistencies in the hearing testimony cited by the appellant do not involve the issue of whether the agency officials had knowledge of the appellant's disclosure, and the appellant does not challenge the administrative judge's finding that the witnesses consistently testified that they did not know about his disclosures.  ID at 15.  Thus, we agree with the administrative judge that the appellant did not show that his second-level

---

immediate supervisor.  *E.g.*, HT1 at 83-84, 86-88, 108, 110-112, 141 (testimony of the appellant's second-level supervisor).

[6] The hearing in this case took place in June 2015, four years after the appellant's initial disclosure to the OIG and almost 2½ years after his reassignment.  ID at 1.

supervisor had actual knowledge of his protected disclosures when he decided to reassign the appellant. ID at 16.

¶24    The administrative judge then considered whether the appellant proved contributing factor by showing that his second-level supervisor had constructive knowledge of his whistleblowing. ID at 17-19. The appellant argued that officials in the Office of the Secretary of Transportation (OST) who knew or should have known of his disclosures directed FHWA officials to replace him as Illinois DA. ID at 18; IAF, Tab 52 at 46. The administrative judge observed that, in support of his argument that OST officials were aware of his disclosures, the appellant relied on a letter to the Secretary of Transportation from a union official dated December 18, 2012, i.e., before the appellant's upcoming transfer became public knowledge, asking the Secretary to consider IDOT's Chief Counsel for the Illinois DA position. ID at 18; IAF, Tab 33 at 100-03; HT1 at 348 (testimony of the appellant). The administrative judge found that no reasonable person could conclude that OST officials had constructive knowledge of the appellant's disclosures based on this letter, as it did not reference any whistleblowing matters. ID at 18. The administrative judge further found that it was likely that IDOT officials were aware that the appellant's position could become vacant "long before" the letter because the appellant apparently informed IDOT in October 2012 that the FHWA was reviewing his effectiveness in his position, and he had asked his second-level supervisor to contact IDOT's Secretary of Transportation about his working relationship with her. *Id.*

¶25    The appellant challenges this finding on review, arguing that neither he nor his second-level supervisor notified IDOT of his reassignment before it became public knowledge. PFR File, Tab 1 at 23 n.8 (citing HT1 at 116-18, 120, 156-57 (testimony of the appellant's second-level supervisor)). He reasons that, because his reassignment was not publicly known when the letter was sent, the labor official could have been aware of the upcoming vacancy in the Illinois DA position only through FHWA Headquarters or OST. PFR File, Tab 1 at 23 n.8.

¶26    This argument is unavailing.  Even assuming that OST officials were aware of the appellant's reassignment, he still has not shown that they were aware of his disclosures.  Thus, we discern no reason to disturb the administrative judge's finding that the appellant failed to show that anyone in FHWA or OST had actual or constructive knowledge about his disclosures.  ID at 18.

We remain this appeal for further findings as to whether the appellant proved contributing factor notwithstanding his failure to satisfy the knowledge/timing test.

¶27    We next consider the appellant's argument on review that the administrative judge improperly treated the knowledge/timing test as the exclusive method for proving contributing factor.  PFR File, Tab 1 at 12.  The agency argues that, absent evidence that anyone with knowledge of the appellant's OIG disclosures was involved in or influenced the reassignment decision, the appellant cannot prove contributing factor.  PFR File, Tab 4 at 19-20.  Yet the knowledge/timing test is not the only way an appellant can establish that his protected disclosures were a contributing factor in the agency's decision to take a personnel action against him.  It is the agency, not its individual officials, from whom an appellant seeks corrective action, and actual knowledge by a single official is not dispositive.  *See Dorney*, 117 M.S.P.R. 480, ¶ 12.  An employee is not required to prove retaliatory motive.  Rather, he "only needs to demonstrate . . . that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect in any way the personnel action."  *Marano v. Department of Justice*, 2 F.3d 1137, 1141, 1143 (Fed. Cir. 1993).[7]  Any weight given to a whistleblowing

---

[7] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues.  However, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction.  *See* 5 U.S.C. § 7703(b)(1)(B).  Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeal.

disclosure, either alone or in combination with other factors, can satisfy the contributing factor standard. *Dorney*, 117 M.S.P.R. 480, ¶ 15.

¶28     The Board has held that, if an administrative judge determines that an appellant has failed to satisfy the knowledge/timing test, she shall consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether they had a desire or motive to retaliate against the appellant. *Id.*, ¶ 15; *Powers v. Department of the Navy*, 69 M.S.P.R. 150, 156 (1995). We note that these factors are a nonexhaustive list of the evidence that may be relevant to a contributing factor determination. *See Dorney*, 117 M.S.P.R. 480, ¶ 15 (reflecting that the listed factors are the types of factors to be considered). The administrative judge did not address the alternative to the knowledge/timing test set forth in *Dorney*. ID at 14-19.

¶29     As discussed above, if the appellant makes out a prima facie case, then the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. *Mastrullo*, 123 M.S.P.R. 110, ¶ 12. Although the administrative judge did not make findings as to whether the appellant proved contributing factor by means other than the knowledge/timing test, she did find that the agency failed to prove by clear and convincing evidence that it would have reassigned the appellant absent his disclosures. ID at 20-22. Specifically, she found that the record did not support the appellant's second-level supervisor's purported reasons for the reassignment. ID at 21-22. She observed that the appellant's reassignment "appears to have been made for political expedience," rather than for the agency's stated reasons. ID at 22.

¶30     We note that some of the factors to be considered in assessing whether the agency has proven that it would have taken an action in the absence of protected activity are similar to those to be considered at the contributing factor stage in a

*Dorney* analysis. *See Carr v. Social Security Administration*, [185 F.3d 1318](#), 1323 (Fed. Cir. 1999) (in determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider all the relevant factors, including the following: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated). However, the Board may not proceed to the clear and convincing evidence test unless it has first made a finding that the appellant established his prima facie case. *Clarke v. Department of Veterans Affairs*, [121 M.S.P.R. 154](#), ¶ 19 n.10 (2014), *aff'd per curiam*, 623 F. App'x 1016 (Fed. Cir. 2015).[8] Accordingly, the administrative judge should not have proceeded to the clear and convincing analysis without first determining whether the appellant proved contributing factor pursuant to *Dorney*, and we must vacate the initial decision's findings regarding whether the agency met its burden by clear and convincing evidence.

¶31    Further constraining us from relying on the administrative judge's clear and convincing findings in assessing the *Dorney* factors is the fact that the appellant, and not the agency, bears the burden of proving contributing factor, and that burden is preponderant evidence. *Wadhwa*, [110 M.S.P.R. 615](#), ¶ 12. Relying on the administrative judge's now-vacated findings would effectively shift the burden of proof on the contributing factor element to the agency.

¶32    On review, the parties dispute the strength of the agency's reasons for reassigning the appellant. PFR File, Tab 1 at 25-26, Tab 4 at 15-19, 24. The

---

[8] Although the U.S. Court of Appeals for the 7th Circuit has disagreed with the Board's decision in *Clarke*, it did so other grounds. *Delgado v. Merit Systems Protection Board*, [880 F.3d 913](#), 923-25 (7th Cir.), *as amended on denial of reh'g and reh'g en banc* (7th Cir. 2018).

appellant also addresses other factors he believes are relevant to a determination of contributing factor under *Dorney*. PFR File, Tab 1 at 14-17. We find that we are unable to resolve these issues on review.

¶33    During the hearing, the appellant's second-level supervisor testified that he reassigned the appellant because the Illinois Division needed new leadership so that it could improve its relationship with its stakeholders. HT1 at 87-89, 107-12, 151-52, 158 (testimony of the appellant's second-level supervisor). The FHWA Administrator and the appellant's first-level supervisor provided similar testimony. The FHWA Administrator testified that the appellant was not sufficiently innovative or collaborative, HT2 at 406-07 (testimony of the FHWA Administrator), and the appellant's first-level supervisor testified that the appellant was not collaborative and that his relationship with IDOT "wasn't exactly where it needed to be" when he was reassigned, *id.* at 450-51, 462-63 (testimony of the appellant's first-level supervisor). The agency argues on review that these explanations justified its reassignment decision. PFR File, Tab 4 at 15-19.

¶34    As the administrative judge observed in conducting her analysis of the agency's case, there is evidence undermining the agency's rationale. ID at 22. For example, on July 5, 2012, just 2 weeks before the appellant's second-level supervisor advised him that he intended to reassign him, the appellant's first-level supervisor presented the appellant with his performance appraisal for the period from June 1, 2011, to May 31, 2012. IAF, Tab 5 at 58. She provided him with a summary rating of Exceeds Expectations. *Id.* She also rated him as Exceeds Expectations in his critical performance element of "National Leadership," commenting that the appellant "is now regularly meeting with the IDOT Secretary and various Deputy Directors of Highways" and "is building a strong relationship with the Chicago DOT commissioner." *Id.* at 59, 65. According to her hearing testimony, by the spring of 2012, while "still not great," the appellant's relationship with his state partners was "getting better." HT2 at 528-29.

Similarly, in his hearing testimony, the appellant disputed the agency's claim that he was not receptive to innovation, and he asserted that he collaborated and built relationships with his state partners and stakeholders throughout his career. HT1 at 193-96, 196, 261-62, 273, 292-93 (testimony of the appellant). On remand, the administrative judge must make credibility findings to resolve the conflicting testimony.

¶35    We next consider whether the disclosures were personally directed at the agency officials involved in the appellant's reassignment. *See Dorney*, 117 M.S.P.R. 480, ¶ 15. The agency argues that the agency officials who reassigned the appellant were not personally named in, or impacted by, the OIG complaint. PFR File, Tab 4 at 22. It also asserts that the OIG "did not substantiate" the appellant's allegations.[9] *Id.* The administrative judge did not address this issue. Therefore, we must remand it for her to assess the evidence and make credibility findings in the first instance.

¶36    The final factor specifically listed in *Dorney*, 117 M.S.P.R. 480, ¶ 15, is whether the individuals involved in the appellant's reassignment had a desire or

---

[9] We are not persuaded by the agency's suggestion that the OIG's report, in essence, cleared the agency of wrongdoing. The issue before the Board is how the OIG investigation may have contributed to the agency's actions at the time that it took them, rather than when the report was concluded, which was 13 months after the appellant was already in his new position. IAF, Tab 18 at 22, Tab 45 at 74; *see Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶¶ 5, 8-11 (2015) (analyzing the issue of whether the appellant nonfrivolously alleged he met the knowledge/timing test by looking at whether the acting agency official knew of the appellant's disclosure at the time he took the action). The OIG determined that the appellant's allegations were serious enough to warrant an investigation. HT1 at 56-57 (testimony of an OIG agent). While the OIG's report was ultimately inconclusive as to whether PLAs were being used improperly in Illinois, there was enough information to refer to the U.S. Attorney's Office for possible action. HT1 at 11-12 (testimony of an OIG agent); IAF, Tab 33 at 16-17. Further, the investigation was extensive, resulting in approximately 12 in-person interviews and taking over 2 years. HT1 at 40, 43 (testimony of an OIG agent); IAF, Tab 45 at 74-83. Finally, the investigation uncovered an instance when the IDOT suspended a contractor based on insufficient information. IAF, Tab 33 at 17. Therefore, the agency's argument regarding the OIG's findings appears to be neither accurate nor relevant to the contributing factor criterion.

motive to retaliate against him. However, as discussed above, we have found the administrative judge properly determined that those involved in the reassignment decision had no actual or constructive knowledge of the appellant's disclosures. Therefore, at the time they made the decision, these officials could have had no desire or motive to retaliate. *Geyer v. Department of Justice*, 70 M.S.P.R. 682, 693 (1996) (observing that disclosures of which a deciding official has neither knowledge nor constructive knowledge cannot contribute toward any retaliatory motive on his part), *aff'd per curiam*, 116 F.3d 1497 (Fed. Cir. 1997) (Table).

¶37　　　Other evidence may be relevant to a contributing factor determination. For example, the appellant argues that the timing of the agency's action is suspicious. PFR File, Tab 1 at 14-17. He disagrees with the agency's contention that the timing was related to the availability of the Indiana DA position, pointing to testimony by his first-level supervisor that this was just one of approximately 20 DA positions that became open during the 4 years preceding his reassignment. PFR File, Tab 1 at 26; HT2 at 535 (testimony of the appellant's first-level supervisor). To the extent that the agency justified its timing based on the complaints of stakeholders, he argues that his alleged difficulties with the IDOT and unions dated back to February 11, 2011 and prior, while the only "thing of significance" that occurred closer to when his reassignment was first proposed in July 2012 was "the OIG's investigation." PFR File, Tab 1 at 14-16; HT1 at 90-91, 108-12 (testimony of the appellant's second-level supervisor), 254-55 (testimony of the appellant); HT2 at 367-68, 374-82, 394-402, 415-16 (testimony of the FHWA Administrator); IAF, Tab 23 at 111, 116-17, 129, 136.

¶38　　　In connection with its investigation, the OIG began to interview IDOT officials in December 2011, approximately 7 months prior to the July 2012 reassignment decision. HT1 at 51-53 (testimony of an OIG agent). Further, the OIG interviewed other IDOT officials and a state representative before December 2012, when the appellant's second-level supervisor denied the appellant's administrative grievance of his reassignment. HT1 at 51-53

(testimony of an OIG agent); IAF, Tab 18 at 30. We agree with the appellant that the administrative judge should make findings regarding whether and to what extent the timing suggests the appellant's protected disclosures led to the agency's decision.

¶39 The record in this appeal was fully developed below and, as outlined above, the parties have presented extensive arguments regarding contributing factor on review. Because the appellant and the agency's witnesses provided conflicting testimony regarding the agency's purported reasons for reassigning the appellant, i.e., his management style and his relationship with the Illinois Division's stakeholders, credibility remains an issue. Accordingly, we remand this appeal to the administrative judge to make further findings.

¶40 On remand, the administrative judge must consider whether the appellant has established that his protected disclosures were a contributing factor in the agency's decision to reassign him. This analysis should include consideration of the relevant evidence. *See Dorney*, 117 M.S.P.R. 480, ¶ 15. Further, it should include a discussion of any evidence that the appellant's OIG disclosures set in motion a course of events that led to his reassignment. *See Marano*, 2 F.3d at 1141-43. If, after this analysis, the administrative judge finds that the appellant has not established that his protected disclosures were a contributing factor in the agency's decision to reassign him, the administrative judge must find that the appellant is not entitled to corrective action.

The appellant has not shown that the administrative judge abused her discretion by denying his witness requests.

¶41 Finally, we consider the appellant's argument on review that the administrative judge abused her discretion by disapproving as witnesses FHWA's Deputy Administrator[10] and four IDOT employees, three of whom were

---

[10] The appellant's contention that the administrative judge disapproved his witness request for FHWA's Deputy Administrator appears to be incorrect. In her May 26, 2015 status conference summary, the administrative judge stated that the appellant

interviewed by the OIG before the appellant's reassignment. PFR File, Tab 1 at 26-27. The appellant contends that the testimony of these witnesses would have established that persons involved in his reassignment had knowledge of his disclosures. *Id.* at 27.

¶42    During a prehearing conference, the administrative judge stated that she would defer ruling on the appellant's witness requests for the IDOT employees until she received his response to her order directing him to set forth facts which, if true, would show that his second-level supervisor was improperly influenced by an IDOT official. IAF, Tab 28 at 3, Tab 30 at 4-5, Tab 37 at 1. In his response to that order, the appellant alleged that his second-level supervisor informed him during their July 2012 meeting that the decision to reassign him had been made by the FHWA Administrator in consultation with unnamed persons in OST. IAF, Tab 33 at 44, 98-99. The administrative judge denied the appellant's witness requests for the IDOT employees because he did not allege that any of them consulted with or influenced the Administrator or the appellant's second-level supervisor. IAF, Tab 37. Because the appellant did not file any objections to the administrative judge's ruling, he is precluded from raising this issue on review. *See Tarpley v. U.S. Postal Service*, 37 M.S.P.R. 579, 581 (1988) (holding that the appellant's failure to timely object to rulings on witnesses precludes his doing so on petition for review).

## ORDER

¶43    For the reasons discussed above, we remand this case to the Central Regional Office for the administrative judge to issue a new remand initial decision in accordance with this Remand Order. The administrative judge may adopt in her remand initial decision her prior findings that the appellant met his

---

withdrew this request. IAF, Tab 44 at 2 n.1. The appellant had an opportunity to object to the accuracy of the summary, *id.* at 4, but failed to do so. Consequently, we need not address this witness request further. *Tarpley v. U.S. Postal Service*, 37 M.S.P.R. 579, 581 (1988).

burden to prove that the Board has jurisdiction over this appeal and that he met his burden to prove by preponderant evidence that he made a protected disclosure. If she determines that the appellant met his burden to prove contributing factor, she may also adopt her prior finding that the agency did not prove by clear and convincing evidence that it would have reassigned the appellant absent his protected disclosures.

FOR THE BOARD:                              /s/ for
                                    _____
                                    Jennifer Everling
                                    Acting Clerk of the Board
Washington, D.C.