**Frederick R. MARANO, Petitioner,**

v.

**DEPARTMENT OF JUSTICE,
Respondent.**

No. 92–3132.

United States Court of Appeals,
Federal Circuit.

Aug. 4, 1993.

Lawrence A. Berger, Mahon & Berger, Garden City, NY, argued, for petitioner.

Reginald T. Blades, Jr., Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Of counsel was Thomas W. Petersen.

Before NIES, Chief Judge, BENNETT, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

CLEVENGER, Circuit Judge.

Frederick R. Marano petitions for review of the final decision of the Merit Systems Protection Board (MSPB or Board), Docket No. NY122191W0213, concluding that Marano had failed to prove by preponderant evidence that his whistleblowing activity was a contributing factor to his reassignment from the Albany Office of the Drug Enforcement Administration, Department of Justice (DEA) to the New York City Office. 51 M.S.P.R. 19. We reverse and remand.

I

Marano was first employed by the DEA in 1973 and was assigned to the Albany, New York Resident Office in 1984, where he attained the position of Criminal Investigator. On January 29, 1990, Marano and five of the six other agents based in Albany submitted a signed memorandum to the incoming Special Agent–in–Charge of DEA's New York Field Division. This writing alleged specific misconduct and mismanagement by the Albany Office's supervisory agents, Resident Agent–In–Charge John McCarthy and Assistant Special Agent–In–Charge William Logay.

The memorandum provoked a prompt investigation of the situation in the Albany Office by Special Agent Inspector McVane of the DEA. McVane's investigation report confirmed the contents of the memorandum. The report also noted that in the absence of leadership from the two faulty supervisors, Marano had been considered the "boss" of the Albany Office, and had assumed the role of *de facto* manager. As a result of the investigation, McVane recommended a major overhaul of the Albany Office to correct the extremely poor management situation, including transferring both faulty supervisors and Marano.

The investigation report and recommendations were given to Acting Deputy Adminis-

trator Burke (ADA), the DEA official ultimately responsible for personnel assignments. The ADA proposed that both supervisors, Logay and McCarthy, be transferred to DEA's New York City Office; that Marano also be transferred to the New York City Office; that the sixth agent who had not signed the memorandum be transferred elsewhere; and that a new supervisor be installed from outside the Albany Office. The five agents who signed the disclosure with Marano were not transferred.

Marano filed a complaint with the Office of Special Counsel (OSC) regarding his reassignment, alleging that it amounted to a prohibited personnel action taken in response to his shielded disclosures under the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified at various sections of 5 U.S.C.) (WPA). Unsuccessful in receiving corrective action from OSC, Marano filed an individual right of action (IRA) with the Board.

In her June 7, 1991 initial decision, the Administrative Judge (AJ) ruled that Marano's memorandum revealing mismanagement in the Albany Office was a protected disclosure under 5 U.S.C. § 2302(b)(8) (Supp. III 1991).[1] The government on appeal does not challenge this portion of her decision. The AJ concluded, however, that the ADA's decision to transfer Marano was not due to the fact that Marano *made* a protected disclosure, but instead stemmed from the investigation into the Albany Office management situation: "[Marano's] transfer was the result of the situation that existed in the Albany Office, not the *disclosures* of information that he made." The AJ credited the ADA's testimony that correction of the situation in Albany would require reassigning Marano in order to affect a "clean sweep" of office leadership and avoid any potential obstacles for the incoming supervisor. The AJ therefore determined that Marano had not established as a legal matter that his disclosure constituted a contributing factor to the subsequent personnel action under 5 U.S.C. § 1221(e)(1).

This initial decision was rendered final under 5 C.F.R. § 1201.113(b) (1993) by the full Board's November 6, 1991 denial of Marano's petition for review of the AJ's decision. Marano timely appealed to this court.

## II

■ While a personnel transfer or reassignment is not an adverse action over which the Board would otherwise normally have jurisdiction, such a personnel action[2] is reviewable by the MSPB when a petitioner asserts the existence of a prohibited personnel practice in violation of his rights under the WPA. *See* 5 U.S.C. §§ 1221(e)(1) & 2302(b)(8); *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 682 n. 5 (Fed.Cir.1992); *Knollenberg v. Merit Sys. Protection Bd.*, 953 F.2d 623, 625 (Fed.Cir.1992).

Through its definition of prohibited personnel practice, the WPA proscribes

(8) tak[ing] or fail[ing] to take ... a personnel action with respect to any employee ... because of—

(A) any disclosure of information ... which the employee ... reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety....

5 U.S.C. § 2302(b)(8). 5 U.S.C. § 1221(a) creates the right of an individual to seek corrective action from the Board with respect to "any personnel action taken ... as a result of a prohibited personnel practice." The WPA, however, provides that, unless the personnel action is otherwise directly appealable to the Board, 5 U.S.C. §§ 1214(a)(3) & 1221(b), an employee affected by such action shall first seek corrective action from OSC. 5 U.S.C. § 1214(a)(3). If the employee is unsuccessful before OSC, he may then file an IRA seeking corrective action from the Board. 5 U.S.C. § 1221(a); *see Ward v.*

---

1. Unless otherwise specified, subsequent citations to 5 U.S.C. appear in (Supp. III 1991).

2. The term "personnel action" is defined in 5 U.S.C. § 2302(a)(2)(A)(iv) (1988) as including a "detail, transfer, or reassignment."

*Merit Sys. Protection Bd.*, 981 F.2d 521, 523 (Fed.Cir.1992). The Board then

> shall order such corrective action as the Board considers appropriate if the employee ... has demonstrated that a disclosure described under section 2302(b)(8) was a contributing factor in the personnel action which was taken ... against such employee....

5 U.S.C. § 1221(e)(1).

Before enactment of the WPA, Congress defined a prohibited personnel practice as "tak[ing] or fail[ing] to take a personnel action ... *as a reprisal for* " a protected disclosure of information. Civil Service Reform Act of 1978, Pub.L. No. 95–454, § 101(a), 92 Stat. 1111, 1114 (CSRA), 5 U.S.C. § 2302(b)(8) (1988) (emphasis added). The courts interpreted this language as requiring the whistleblower to carry a considerable burden of proof in order to establish his case. The whistleblower was required to establish, *inter alia*, that the disclosure constituted a "significant" or "motivating" factor[3] in the agency's decision to take the personnel action. *See Clark v. Department of Army*, 997 F.2d 1466, 1469–70 (Fed.Cir.1993).

 Congress later recognized this "excessively heavy burden imposed on the employee" in effect had gutted the CSRA's protection of whistleblowers. 135 Cong.Rec. 5033 (1989) (Explanatory Statement on S. 20, 101st Cong., 1st Sess.1989); *see* 135 Cong. Rec. 564 (1989) (remarks of Sen. Levin) (surveys reveal the dismal effectiveness of CSRA's encouragement and protection of whistleblowers). Thus, in 1989 Congress amended the CSRA's statutory scheme with the WPA, thereby substantially reducing a whistleblower's burden to establish his case, and "send[ing] a strong, clear signal to whistleblowers that Congress intends that they be protected from any retaliation related to their whistleblowing." 135 Cong.Rec. 5033

(1989) (Explanatory Statement on S. 20). Rather than being required to prove that the whistleblowing disclosure was a "significant" or "motivating" factor, the whistleblower under the WPA, 5 U.S.C. § 1221(e)(1), must evidence only that his protected disclosure played a role in, or was "a contributing factor" to, the personnel action taken:

> The words "a contributing factor" ... mean *any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision.* This test is specifically intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a "significant", "motivating", "substantial", or "predominant" factor in a personnel action in order to overturn that action.

135 Cong.Rec. 5033 (1989) (Explanatory Statement on S. 20) (emphasis added); *see also* 135 Cong.Rec. 5032, 5033 (Explanatory Statement on S. 20 should be read in conjunction with the exhaustive legislative history of S. 508, 100th Cong., 2d Sess. (1988)); 135 Cong.Rec. 4513 (1989) (Joint Explanatory Statement on S. 508); 5 U.S.C. §§ 1214(b)(4)(B)(i) & 1221(e)(1). This substantial reduction of the whistleblower's burden evidences that a personnel action, taken "because of" a protected disclosure, or "as a result of" a prohibited personnel practice, and therefore encompassed by sections 2302(b)(8) and 1221(a), may be taken "because of" or "as a result of" many different factors, only one of which must be a protected disclosure and *a* contributing factor to the personnel action in order for the WPA's protection to take effect. Indeed, the legislative history of the WPA emphasizes that "any" weight given to the protected disclosure, either alone or even in combination with other factors, can satisfy the "contributing factor" test.

---

**3.** *See, e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–86, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977) ("substantial" factor); *Spadaro v. Department of Interior*, 9 MSPB 293, 10 M.S.P.R. 12, 13 (1982) ("significant" factor); *Special Counsel v. Department of State*, 9 MSPB 14, 9 M.S.P.R. 363, 371 (1982) ("significant" factor); *Gerlach v. Federal Trade Comm'n*, 8 MSPB 599, 9 M.S.P.R. 268, 274–76

(1981) (citing *Mt. Healthy* ) ("substantial", "motivating" or "significant" factor or "real reason"); *see also* S.Rep. No. 413, 100th Cong., 2d Sess. 11–14 (1988) (accompanying S. 508, 100th Cong., 2d Sess. (1988) U.S.Code Cong. & Admin.News 1988, 6183); *Warren v. Department of Army*, 804 F.2d 654, 656–58 (Fed.Cir.1986) (quoting *In re Frazier*, 1 MSPB 159, 1 M.S.P.R. 163 (1979), *aff'd*, 672 F.2d 150 (D.C.Cir.1982)).

■ It is thus evident in light of the WPA's modifications to the CSRA that though evidence of a retaliatory motive would still suffice to establish a violation of his rights under the WPA, *cf. Hathaway v. Merit Sys. Protection Bd.*, 981 F.2d 1237, 1238 (Fed. Cir.1992), a whistleblower *need not* demonstrate the existence of a retaliatory motive on the part of the employee taking the alleged prohibited personnel action in order to establish that his disclosure was a contributing factor to the personnel action: "Regardless of the official's motives, personnel actions against employees should quite [simply] not be based on protected activities such as whistleblowing." S.Rep. No. 413, 100th Cong., 2d Sess. 16 (1988) (accompanying S. 508).

■ Once a whistleblower has established the existence of a prohibited personnel practice by a preponderance of evidence, the burden then shifts to the agency to demonstrate by clear and convincing evidence that it would have taken the same personnel action against the whistleblower even in the absence of his protected disclosure. 5 U.S.C. §§ 1214(b)(4)(B)(ii) & 1221(e)(2); *see also Clark*, at 1469–70; 135 Cong.Rec. 5033 (1989) (Explanatory Statement on S. 20). If the agency cannot carry its burden on this affirmative defense, the Board "shall order such corrective action as the Board considers appropriate." 5 U.S.C. § 1221(e)(1).

### III

■ Congress has instructed this court to reverse a decision of the Board that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). The proper interpretation of a statute is a question of law which we entertain *de novo* on appeal. *Commercial Energies, Inc. v. United States*, 929 F.2d 682, 684 (Fed.Cir.1991); *Pasteur v. United States*, 814 F.2d 624, 626 (Fed.Cir. 1987).

The only issue to be resolved in this case is whether Marano's protected disclosure was a contributing factor to his reassignment to the New York City Office. Resolution of this issue invites us to investigate both the WPA's statutory scheme and Congress' intent behind its enactment.

In attempting to persuade this court of the Board's error, Marano argues that because the fact of his signing, as well as the content of, his disclosure triggered the investigation in Albany, and because the information discovered as a result of the investigation prompted DEA to reassign the supervisors and Marano, the disclosure *a fortiori* was a "contributing" factor to the personnel action. Thus, Marano argues that because the reassignment decision was "inextricably linked" to his disclosure, he is protected by the WPA from the adverse action, unless the agency can prove its affirmative defense.

Contrary to Marano's position, the government argues that Marano's status as a whistleblower played no role in the decision to reassign him. Rather, the action was taken as a result of the situation existing in the Albany Office that was confirmed by the independent investigation. According to the government, the Board can only provide corrective action where an employee's *status* as a whistleblower is a contributing factor in the personnel action taken. Therefore, presumably, the WPA should not apply to Marano because his whistleblowing was not the immediate cause-in-fact of his reassignment, and therefore DEA's action was warranted and is sustainable under the law.

### IV

This court has not previously decided whether the distinction between the fact of disclosure (*i.e.*, the whistleblower's status as a whistleblower), and the content of the disclosure made by the whistleblower, may affect the decision as to whether a particular disclosure is a "contributing factor" to a personnel action. In this case, if the WPA is concerned only with the fact of disclosure, and not with the content thereof, we must affirm the Board's decision because substantial evidence supports the AJ's finding that Marano's whistleblower status, and the bare fact that he blew the whistle, was not considered by the DEA official in making the reas-

signment decision. Substantial evidence, however, also supports the AJ's finding that the situation in the Albany Office exposed by Marano's disclosure resulted in his reassignment.

The policy goal behind the WPA was to encourage government personnel to blow the whistle on wasteful, corrupt or illegal government practices without fearing retaliatory action by their supervisors or those harmed by the disclosures. WPA § 2, 103 Stat. 16, 5 U.S.C. § 1201 note. Such encouragement is guaranteed by the substantially reduced burden that must be carried by the whistleblower to earn the WPA's protection from adverse action. So long as a protected disclosure is *a* contributing factor to the contested personnel action, and the agency cannot prove its affirmative defense, no harm can come to the whistleblower. We thus view the WPA as a good-government statute. As long as employees fear being subjected to adverse actions for having disclosed improper governmental practices, an obvious disincentive exists to discourage such disclosures. A principal office of the WPA is to eliminate that disincentive and freely encourage employees to disclose that which is wrong with our government.[4] How a protected disclosure is made, or by whom, matters not to the achievement of the WPA's goal. The elements of misgovernment must be disclosed before they can be cured in satisfaction of the WPA's *raison d'etre*.[5]

A typical case under the WPA involves an employee blowing the whistle on certain practices observed in the workplace, such as misuse of government funds or grossly wasteful practices. Since rectifying such conduct would not normally involve taking a personnel action against the whistleblower, any proximate personnel action taken against the employee would immediately demand attention as a potential violation of the employee's rights under the WPA. *See* 135 Cong.

Rec. 5035 (1989) (reprint of Joint Explanatory Statement on S. 508) ("One of many possible ways to show that the whistleblowing was a [contributing] factor in the personnel action is to show that the official taking the action knew (or had constructive knowledge) of the disclosure and acted within such a period of time that a reasonable person could conclude that the disclosure was a factor in the personnel action."); 134 Cong.Rec. 27,854 (1988) (Joint Explanatory Statement on S. 508); S.Rep. No. 413, 100th Cong., 2d Sess. 14 (1988) (accompanying S. 508); *see also Clark*, at 1471–72.

█ The WPA, however, also applies to the situation where a government employee discloses information that is closely related to the *employee's day-to-day responsibilities*, such that structuring a remedy to the situation revealed in the disclosure could foreseeably affect the whistleblower. In the situation where the information disclosed is closely related to the whistleblower's duties, as evidenced by the facts of the present case, a tension exists between the WPA's protection of the individual and the government's need to act on the basis of the information revealed to remedy the disclosed wrongdoing. This tension is most troublesome when the government's corrective action would ensnare the whistleblower allegedly for reasons independent of the simple fact that the employee was the initial source of the information. In some of such cases, reasoning that the personnel action was grounded on bases "independent" of the actual protected disclosure could easily be used as a ruse to eviscerate the WPA's protection. In all such cases, the whistleblower who has done no wrong would have *no incentive to improve government* by making a protected disclosure. Indeed, if the whistleblowing employee who has done no wrong can be disciplined for having disclosed misgovernment of which he is not

---

**4.** Indeed, specific to this case, DEA policy both requires and encourages agents to report conduct on the part of DEA employees that either violates the agency's code of conduct or may jeopardize the mission of the agency and/or the safety of its personnel.

**5.** In this case, we are not faced with a situation in which an employee in essence blew the whis-

tle on his own misconduct in an effort to acquire the WPA's protection. Even so, we doubt that the WPA would protect such an individual from an agency's remedial actions. *See* 135 Cong.Rec. 5033 (1989) ("[The WPA] will not shield employees who engage in wrongful conduct merely because they have at some point 'blown the whistle'....") (Explanatory Statement on S. 20).

part, the employee surely will have no incentive to reveal his knowledge.

 Thus, in order to prevent subversion of the WPA's policy goals, the latter type of whistleblower only needs to carry the same burden before the Board as the more "typical" whistleblower. That is, the employee only needs to demonstrate by preponderant evidence that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect in any way the personnel action. Upon such showing, the agency must bear the burden of proving by clear and convincing evidence that the personnel action would have been taken in the absence of the protected disclosure.

## V

 In this case, though the ADA testified that the decision to reassign Marano was based solely on the results of the investigation and not on the bare fact that Marano *made* a disclosure, all the testimony before the AJ proves that the initial memorandum was inextricably intertwined with the investigation. The investigation was prompted as the direct result of the protected disclosure, and served, *inter alia*, to verify the content of the protected disclosure. Consequently, there is more than sufficient evidence in the record to support the AJ's finding that Marano was reassigned because of the management situation in the Albany Office. In this case, then, the uncontested sequence of events demonstrates that the initial, protected disclosure, "in connection with" the investigative report, satisfies the "contributing factor" requirement of the statute. The content of Marano's disclosure gave the agency the reason for its personnel action. Consequently, the contributing factor in this case appears to be the same as the agency's reason for taking the personnel action. The facts uniformly prove that the content of Marano's disclosure was a contributing factor to his reassignment. The AJ thus erred as a matter of law, not of fact, in deciding that only the fact of disclosure, or in other words, the whistleblower's status as a whistleblower, could be a contributing factor under the statute, and in holding that Marano had not met his burden of proof under the WPA. Since "[w]histleblowing should never be a factor that contributes in any way to an adverse personnel action," 135 Cong.Rec. 5033 (1989) (Explanatory Statement on S. 20), the burden must shift to DEA to demonstrate that the same personnel action would have been taken had the agency not learned of the situation in the Albany Office from Marano. Upon remand, the government will have the opportunity to establish its affirmative defense by clear and convincing evidence. If the government cannot sustain its burden on that issue, the Board will then have occasion to fashion such corrective action as it considers appropriate.

## VI

Because Marano's disclosure was a contributing factor to the agency's decision to transfer him, we reverse the decision of the Board and remand the case for further proceedings.

Costs to petitioner.

REVERSED and REMANDED.