**Corey J. MEYERS, Petitioner,**

v.

**DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

No. 02–3013.

United States Court of Appeals, Federal Circuit.

April 4, 2002.

---

1. The Board opinion does not address this claim, nor does the PTO's brief on this appeal.

**524**

Before LOURIE, GAJARSA, and PROST, Circuit Judges.

## DECISION

PER CURIAM.

Corey J. Meyers, M.D., petitions for review of the final decision of the Merit Systems Protection Board denying his Individual Right of Action ("IRA") appeal. *Meyers v. DVA*, 90 M.S.P.R. 28 (M.S.P.B. 2001) (final order). Because substantial evidence supports the Board's conclusion that the Department of Veterans Affairs would have taken adverse action against Meyers in the absence of disclosures protected under the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified in scattered sections of 5 U.S.C.), we *affirm*.

## DISCUSSION

Dr. Meyers' employment as a physician at the Department of Veterans Affairs (the "agency") began in its clinic in Pittsfield, Massachusetts, where he was appointed to serve a two-year probationary term beginning February 17, 1998. *Meyers v. DVA*, No. BN–1221–00–0187–W–1, slip op. at 2 (M.S.P.B. Dec.29, 2000) (initial decision). While at the Pittsfield Clinic, Meyers expressed concern to the agency's management regarding what he perceived to be pharmacology safety issues, *i.e.*, the over-prescription of medication. *Id.* at 5–6. His strong views on that topic were sometimes not well received by his patients. Indeed, a large number of patients complained to the agency about his conduct. *Id.* at 7. Beginning October 13, 1999, the agency placed him on a temporary detail at its clinic in Leeds, Massachusetts, where he served until February 15, 2000, at which time the agency terminated him. *Id.* at 2. Before Meyers' termination, the agency convened a Board of Investigation ("BOI") to investigate the complaints against Meyers and a Professional Standards Board ("PSB") to assess Meyer's performance during his probationary period. *Id.* at 7, 10. The BOI found the complaints to be credible, *id.* at 8–10, and the PSB recommended that Meyers be terminated, *id.* at 10–11.

Meyers contends that the Leeds detail and termination were prohibited personnel actions taken in retaliation for protected whistleblower disclosures concerning pharmacology abuse at the Pittsfield clinic. The agency contends that Meyers' detail and termination actions were taken as a result of his poor patient interaction skills.

Meyers filed a complaint at the agency's Office of Special Counsel ("OSC"), asserting his whistleblower claim. *Id.* at 2. After the OSC investigated the complaint and denied him relief, Meyers appealed to the

Board. After a hearing, the administrative judge ("AJ") assigned to the case denied Meyers' appeal. *Id.* at 1. The AJ concluded that Meyers had reasonably believed that polypharmacy or overmedication was a safety hazard at the Pittsfield clinic and that Meyers had therefore made protected disclosures when he reported those issues. *Id.* at 6–7. However, the AJ concluded that those protected disclosures were not contributing factors in the personnel actions against Meyers, *id.* at 9, and that Meyers failed to prove a retaliatory motive on the part of those taking the personnel actions against him, *id.* at 17. Moreover, the AJ held that the agency had proven by clear and convincing evidence that it would have taken the same actions in the absence of those disclosures. *Id.* at 3, 17. In particular, the AJ concluded that clear and convincing evidence supported the agency's assertion that Meyers' performance and conduct relating to patient interaction (*i.e.,* his "bedside manner") justified those personnel actions. *Id.* at 17. That evidence comprised interviews with clinic staff concerning Meyers' interactions with patients, *id.* at 7; interviews and statements from patients regarding the same, *id.* at 8; a twenty-seven page report of complaints from patients and their relatives concerning Meyers, *id.;* a newsletter written by the local chapter of the Disabled American Veterans noting the frequency of complaints and recommending that patients avoid the Pittsfield clinic, *id.;* a letter dated January 28, 2000, from Dr. George J. Vakkur, Dr. Meyers' supervisor, concerning Meyers' performance, *id.* at 10; reports from the BOI, *id.* at 8–10; and the recommendation of the PSB, *id.* at 10–11.

Meyers appealed the AJ's initial decision to the full Board, which denied his petition for review, thus rendering the initial decision final. 5 C.F.R. § 1201.113(b) (2001). Meyers timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); *Gibson v. Dep't of Veterans Affairs,* 160 F.3d 722, 725 (Fed.Cir. 1998).

Meyers argues that the Board erred in concluding that clear and convincing evidence supported the agency's assertion that his performance justified the personnel actions. Meyers' specific assertions include the following: the January 28, 2000 letter from Dr. Vakkur was fraudulent and false; the clinic staff's statements against him were induced by rewards of cash and promotions; the patient complaints directed at him were attributable to his refusal to prescribe medication that the patients wanted but that he considered medically imprudent; the "primary data" for any specific complaint does not substantiate the complaint made against him; and the fact that several charges made against Meyers were found to be unsubstantiated. Furthermore, Meyers contends that the Board erred by ignoring evidence of the agency's retaliatory motive, evidence that he exposed systemic polypharmacy dangers and that Dr. Boutelle made the following statement to him on June 23, 1999: "You have to do what's best for your son. If you continue to make these safety allegations, we will have to let you go." Finally, Meyers also contends that he was denied due process because the PSB panel that evaluated him did not consist of his peers.

In an IRA action, an employee bears the initial burden of establishing by a preponderance of the evidence that his protected disclosure was a contributing factor in an adverse personnel action. 5 U.S.C. § 1221(e)(1) (2000); *Marano v. Dep't of Justice*, 2 F.3d 1137, 1143 (Fed.Cir.1993). The agency may then rebut the charge by establishing by clear and convincing evidence that it would have taken the adverse action in the absence of the disclosure. 5 U.S.C. § 1221(e)(2) (2000); *Marano*, 2 F.3d at 1143. In determining whether the agency has met its burden, the Board considers the following factors: (1) the strength of the evidence in support of the agency's action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency has taken similar action against similarly situated employees who are not whistleblowers. *Caddell v. Dep't of Justice*, 66 M.S.P.R. 347, 351 (1995), *aff'd*, 96 F.3d 1367 (Fed.Cir.1996) (table).

We conclude that the Board's decision must be affirmed. First, substantial evidence supports the Board's conclusion that Meyers' poor patient interaction skills justified the personnel actions taken against him. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The mere existence of contrary evidence or the possibility that a decision maker might reach a different conclusion from the evidence is insufficient to overturn a factual determination for lack of substantial evidence. *Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co.*, 104 F.3d 1205, 1213 (10th Cir.1997). Accordingly, we do not re-weigh the evidence; that is the province of the Board. Instead, our role is a limited one, namely,

to decide whether a reasonable person could conclude based on the evidence that Meyers' performance justified the personnel actions taken against him. We conclude that to be the case. The evidence of Meyers' poor bedside manner is voluminous. Meyers' contrary evidence, attacks on the evidence against him and ameliorating explanations do not detract from the "substantial" character of the evidence. For example, even if we were to disregard the Vakkur memo dated January 28, 2000, Vakkur testified to the same effect at the hearing before the AJ. To the extent that the AJ found that testimony to be credible, that determination is "virtually unreviewable." *Hambsch v. Dep't of the Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). As another example, Meyers has not offered any evidence to substantiate his assertion that staff testimony unfavorable to him was coaxed by rewards.

Meyers' arguments regarding retaliatory motive are also unavailing. Retaliatory motive is just one factor in determining whether an agency has met its burden. Meyers did not present any evidence to substantiate his allegation that Boutelle threatened him. Even if that allegation were substantiated, the strength of the evidence of Meyers' poor performance is sufficient to constitute substantial evidence supporting the Board's conclusion.

Finally, Meyers' due process argument is also unavailing. Meyers contends that his due process rights were violated by the fact that the PSB panel comprised two chiefs of staff, rather than peers at his level. Meyers cites 38 U.S.C. § 7464, which states that "[a]t least two of the members of each [Disciplinary Appeals B]oard shall be employed in the same category of position as the employee who is appealing the adverse action." It is not clear that Meyers presented this argument to the Board; nor is it clear whether, even

assuming that the cited statute is applicable to the PSB, whether a chief of staff physician is not of the "same category" as Meyers. In any event, as an issue separate and distinct from the whistleblower allegations, Meyers' argument that his termination did not comply with requirements for due process would not have been within the Board's jurisdiction because Meyers was a probationary employee at the time of his termination. *See Marren v. Dep't of Justice,* 51 M.S.P.R. 632, 638–39 (M.S.P.B. 1991), *aff'd,* 980 F.2d 745 (Fed.Cir.1992) (table) ("[T]he Board's jurisdiction to review IRA complaints based on personnel actions over which it otherwise does not have appellate jurisdiction is limited to adjudicating the whistleblower allegations."). *See also Meyers* initial decision at 4–5, 13 (finding that Meyers was a probationary employee, and that his claim for discrimination was therefore unreviewable in this IRA whistleblower appeal). To the extent that the composition of the PSB panel might have been subject to criticism, that possibility does not alter our conclusion that substantial evidence supports the Board's determination that the agency established by clear and convincing evidence that it would have detailed and terminated Meyers in the absence of any protected disclosures.

We have considered Meyers' remaining arguments and find them unconvincing.

Because substantial evidence supports the Board's conclusion, we affirm.