**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

RITA S. VAZ,

           Appellant,

      v.

DEPARTMENT OF HOUSING AND
    URBAN DEVELOPMENT,

           Agency.

DOCKET NUMBER
DA-1221-15-0132-W-1

DATE: September 6, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Celine Fernandes</u>, Arlington, Massachusetts, for the appellant.

<u>Mary C. Merchant</u> and <u>Sakeena Adams</u>, Fort Worth, Texas, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**REMAND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REVERSE the initial decision, and REMAND the case to the Dallas Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      At all times relevant to this appeal, the appellant was employed in the agency's Office of Public Housing, Houston Field Office. *Vaz v. Department of Housing and Urban Development*, MSPB Docket No. DA-1221-15-0132-W-1, Initial Appeal File (IAF), Tab 1 at 10, 19.  On February 10, 2014, the appellant filed a whistleblower reprisal complaint with the Office of Special Counsel (OSC).  IAF, Tab19.  In her complaint, she alleged that she had disclosed abuses of authority, gross mismanagement, and violations of various Federal laws, and in retaliation for her disclosures the agency had taken a number of personnel actions, including giving her a minimally satisfactory performance appraisal in Fiscal Year (FY) 2013 and then placing her on a performance improvement plan (PIP) on March 27, 2014.  *Id*. at 6-15.  She alleged that she had made the disclosures beginning in 2006 and "aggressively" since 2013, both "internally" to various management officials, and "externally" to a Board administrative judge,[2] an Equal Employment Opportunity Commission (EEOC) administrative judge, and agency attorneys.  *Id*. at 6.  The appellant made subsequent amendments to that complaint, including an alleged disclosure to the Inspector General (IG) in 2014, with the final modification taking place on August 14, 2014.  *See id*. at 4,

---

[2] The appellant named the administrative judge who adjudicated her previous appeal in *Vaz v. Department of Housing and Urban Development*, MSPB Docket No. DA-0752-13-0450-I-1, Initial Decision (Nov. 19, 2013), which was dismissed as withdrawn.  On August 4, 2014, the appellant filed a second Board appeal, in which she alleged, among other things, that the agency had engaged in whistleblower reprisal.  The administrative judge dismissed that appeal for lack of jurisdiction, partly on the grounds that the appellant had not exhausted her remedies with OSC. *Vaz v. Department of Housing and Urban Development*, MSPB Docket No. DA-3443-14-0579-I-1, Initial Decision (Sept. 17, 2014).  Neither party filed a petition for review of that decision.  The same administrative judge was initially assigned to the instant appeal.

71-72.  On October 28, 2014, OSC notified the appellant that it had closed its investigation and advised her of her Board appeal rights.  IAF, Tab 20 at 50.

¶3        On December 14, 2014, the appellant filed the instant Board appeal.  IAF, Tab 1.  The administrative judge to whom the case was initially assigned informed the appellant of the requirements for establishing jurisdiction in an IRA appeal and ordered her to submit evidence and argument on the jurisdictional issue.  IAF, Tab 3.  In her response to that order, the appellant alleged that she made protected disclosures on the following occasions:  (1) on June 16, 2008, to the Assistant Secretary; (2) on July 24, 2013, to an agency attorney; (3) on several dates from 2013 to 2014, to an EEOC administrative judge; and (4) in 2014, to the IG, the Chief Human Capital Officer, and agency counsel.  IAF, Tab 10 at 13-25.

¶4        The administrative judge advised the parties that the issue of jurisdiction still had not been resolved and ordered the appellant to produce a copy of her OSC complaint and additional correspondence with OSC.[3]  IAF, Tab 17 at 2.  In response, the appellant provided a copy of her amended OSC complaint form and various documents she submitted to OSC in support of the complaint.  IAF, Tab 19.  Based on the appellant's submissions, the administrative judge found

---

[3] We note that submission of an OSC complaint is not the only way to establish jurisdiction, as further discussed below.  The administrative judge's earlier jurisdictional order appropriately detailed the various ways that the appellant could establish exhaustion.  IAF, Tab 3 at 7.  However, after receipt of the appellant's submissions, the administrative judge advised the parties that the issue of jurisdiction had not yet been resolved, and that the record indicated that the appellant had attempted to submit a copy of her OSC complaint in a pleading that had been rejected.  IAF, Tab 17 at 2.  Thus, the administrative judge's order instructed the appellant to resubmit the OSC complaint.  *Id*.  The administrative judge also properly explained that it was not necessary for the appellant to provide a copy of the detailed decision letter that she received from OSC.  *See Bloom v. Department of the Army*, 101 M.S.P.R. 79, ¶ 10 (2006) (stating that, under 5 U.S.C. § 1214(a)(2)(B), OSC's written statement containing its summary of relevant facts related to the appellant's complaint is not admissible without the consent of the appellant).

that a hearing was warranted and proposed a date for the hearing. IAF, Tabs 21-22.

¶5      Following an unsuccessful attempt at mediation, the appeal was reassigned to a second administrative judge. IAF, Tab 34. The new administrative judge ordered the appellant to identify and describe her disclosures with sufficient specificity such that he could evaluate whether she nonfrivolously alleged that she made a protected disclosure. IAF, Tab 39 at 1. The appellant responded. IAF, Tabs 40-41. Without holding the appellant's requested hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 43, Initial Decision (ID). In particular, he found that the appellant failed to establish that she had made protected disclosures of gross mismanagement or an abuse of authority, and that the Board did not have jurisdiction over her claims regarding equal employment opportunity (EEO) matters. ID at 5-6.

¶6      On petition for review, the appellant argues that the administrative judge ignored the ruling by the first administrative judge that a hearing was warranted. Petition for Review (PFR) File, Tab 1 at 3-4. The appellant further contends that the administrative judge failed to address disclosures (2) through (4), as well as her claim that the agency retaliated against her for perceived whistleblowing. *Id*. The agency has responded. PFR File, Tab 3.

### DISCUSSION OF ARGUMENTS ON REVIEW[4]

¶7      The appellant first challenges the administrative judge's decision to dismiss her appeal for lack of jurisdiction without holding a hearing when the first administrative judge had previously found that a hearing was warranted. PFR File, Tab 1 at 3-4. The issue of jurisdiction is always before the Board, however,

---

[4] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

and may be raised by either party or sua sponte by the Board at any time during a Board proceeding. *Simnitt v. Department of Veterans Affairs*, 113 M.S.P.R. 313, ¶ 5 (2010). The second administrative judge provided notice to the parties of a specific jurisdictional issue that he believed remained unresolved, allowed them to make submissions addressing the issue, and then he made his jurisdictional determination based upon the record evidence. IAF, Tabs 39-43. Although, as explained below, we disagree with certain findings made by the administrative judge, as well as his conclusion that the Board lacks jurisdiction over the appeal, we find that it was within his authority to revisit the issue of jurisdiction after he was assigned the appeal, despite the first administrative judge's apparent finding that the Board had jurisdiction over the appeal.

¶8        To establish jurisdiction over an IRA appeal, and the consequent right to a hearing, an appellant must show by preponderant evidence that she exhausted her administrative remedies before OSC and make nonfrivolous allegations[5] that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take, or threaten to take or fail to take, a personnel action as defined under 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see* 5 U.S.C. §§ 1214(a)(3), 1221(e)(1). For the following reasons, we find that the appellant has established jurisdiction over a portion of her retaliation claims, and is therefore entitled to a hearing on those particular claims.

---

[5] The Board's regulations define a nonfrivolous allegation as an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s). The U.S. Court of Appeals for the Federal Circuit has found that, in the context of an IRA appeal, a nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020).

**The appellant exhausted her remedies with OSC regarding disclosures (1) through (4), but not her claim of reprisal for perceived whistleblowing.**

¶9        Under 5 U.S.C. § 1214(a)(3), an employee is required to seek corrective action from OSC before seeking corrective action from the Board through an IRA appeal.  The Board's jurisdiction is limited to matters raised before OSC.  *Coufal v. Department of Justice*, 98 M.S.P.R. 31, ¶¶ 14, 18 (2004).   The substantive requirements of exhaustion are met when an appellant has provided OSC with sufficient basis to pursue an investigation.  *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10.  An appellant may demonstrate exhaustion of her OSC remedies through her initial OSC complaint or other written correspondence to and from OSC concerning her allegations.  *Benton-Flores v. Department of Defense*, 121 M.S.P.R. 428, ¶ 6 (2014).  In the alternative, exhaustion may be proved through other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in the MSPB appeal.   The appellant must prove exhaustion with OSC by preponderant evidence, not just present nonfrivolous allegations of exhaustion. 5 U.S.C. § 1204(a)(3); 5 C.F.R. § 1201.57(c)(1).

¶10        Based on our review of the appellant's OSC complaint and subsequent correspondence, *see* IAF, Tab 19, we find that the appellant exhausted her remedies with OSC with respect to disclosures (1) through (4).[6]  To the extent the administrative judge limited his attention to disclosure (1) only, without addressing disclosures (2) through (4), we agree with the appellant that this was error.  *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980).

¶11        However, we find that the appellant has not shown that she alleged before OSC that the agency retaliated against her as a perceived whistleblower.   We

[6] The appellant's correspondence with OSC describes other alleged disclosures to agency management, but the appellant has not otherwise referred to those disclosures in her pleadings before the Board.

therefore lack jurisdiction over that claim. *See El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 12 (2015) (finding that, even if the Board considered the appellant's claim that he was a perceived whistleblower, he failed to establish jurisdiction over his claim because he failed to exhaust his administrative remedy), *aff'd*, 663 F. App'x 921 (Fed. Cir. 2016). While the administrative judge erred in failing to address the appellant's claim of retaliation for perceived whistleblowing, which she also raised in the proceedings below, *see* IAF, Tab 41 at 6, his error did not prejudice the appellant's substantive rights. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

<u>The appellant has made a nonfrivolous allegation that a portion of disclosure (2) was protected under 5 U.S.C. § 2302(b)(8).</u>

¶12    We next consider whether the appellant nonfrivolously alleged that her disclosures were protected under 5 U.S.C. § 2302(b)(8). In conducting this inquiry, the test is whether a disinterested observer with knowledge of the essential facts known to or readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or substantial and specific danger to public health or safety. *Lachance v. White*, 174 F.3d 1378, 1379-81 (Fed. Cir. 1999).

*Disclosure 1*

¶13    Regarding disclosure (1), which the appellant describes as her "internal" disclosure, the appellant alleges that in June 2008, she informed the Assistant Secretary verbally and by email that her then-supervisor was deliberately mistreating and neglecting the housing authorities in her portfolio and abusing his authority as a supervisor. IAF, Tab 10 at 13-17, Tab 19 at 14. The OSC correspondence includes several emails, which the appellant forwarded to the Assistant Secretary, purportedly showing that her supervisor at that time engaged

in gross mismanagement by deliberately placing her on a PIP when she had timely completed her assignment, and abused his authority by failing to correct an assignment log and by not similarly penalizing other employees in the same or similar manner. IAF, Tab 19 at 14-20. In describing disclosure (1), the appellant further alleged that in 2006 and 2007, she verbally notified another agency manager that her supervisor failed to rescind the PIP even after admitting that the system used to log and close her cases was flawed. *Id*. at 15.

¶14    The appellant's disagreement with how agency officials managed performance issues or provided her assignments does not constitute a nonfrivolous allegation of gross mismanagement. *See Cassidy v. Department of Justice*, 118 M.S.P.R. 74, ¶ 8 (2012) (explaining that gross mismanagement is a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission). To the extent the appellant alleged gross mismanagement regarding the supervisor's oversight of housing authorities, the information she described under disclosure (1) is too vague to qualify for protection under 5 U.S.C. § 2302(b)(8).[7]

¶15    Similarly, the appellant has provided scant information regarding her supervisor's alleged failure to correct an assignment log, nor has she provided sufficient detail regarding the performance of other employees she alleges should also have been penalized for deficiencies around the time she was placed on a PIP. As a result, we find that the appellant has failed to make a nonfrivolous allegation that she disclosed an abuse of authority. *See Wheeler v. Department of Veterans Affairs*, 88 M.S.P.R. 236, 241, ¶ 13 (2001) (holding that an abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that

---

[7] As discussed below, we reach a different conclusion regarding similar allegations set forth in disclosure (2).

results in personal gain or advantage to himself or to preferred other persons). Accordingly, we find that disclosure (1) is not protected.

*Disclosure 2*

¶16        The appellant states that in a July 24, 2013 email to agency counsel, she disclosed abuse of supervisory authority, gross mismanagement, and gross waste of funds on the part of her then-supervisor.  IAF, Tab 10 at 18-19, Tab 19 at 66-70.  The email includes allegations that the supervisor discriminated against her on the basis of color and national origin, slandered her, and subjected her to "emotional gang rape."  IAF, Tab 19 at 67-69.  The appellant also alleged that the supervisor was negligent in his oversight of the housing authorities in the appellant's portfolio, in particular the Harris County Public Housing Authority (PHA).  *Id*. at 68-69.  The email includes excerpts from and links to a July 9, 2013 news article describing the results of a recent IG audit that uncovered millions of dollars in fraudulent and wasteful expenditures by the Harris County PHA, and a July 16, 2013 letter of concern from U.S. Senator Charles Grassley regarding the results of that audit.  *Id*.; Jon Cassidy, *IG says Texas housing authority is auditors' nightmare*, Washington Examiner (July 9, 2013), https://www.washingtonexaminer.com/ig-says-texas-housing-authority-is-auditors-nightmare (last accessed Sept. 6, 2023); Letter from U.S. Senator Chuck Grassley, Committee on the Judiciary (July 16, 2013), https://blog.chron.com/texaspolitics/files/2013/07/Grassley-to-HUD-7-16-2013.pdf (last accessed Sept. 6, 2023) (Grassley Letter).[8]  In that letter, Senator Grassley quoted with disapproval the supervisor's previous assurances that the practices in the Houston field office were "some of the best throughout the region," and his subsequent statement that

---

[8] Although the appellant does not appear to have submitted the Washington Examiner article or Grassley Letter in any of her submissions to the Board, we have accessed the links she provided and confirmed that the excerpts she included in her submission are accurate.  We take official notice of the article and the letter.  5 C.F.R. § 1201.64.

"we didn't expect anything was actually going on here of concern." Grassley Letter at 1.

¶17    The appellant's disclosures concerning alleged discrimination, harassment, and the creation of a hostile work environment in violation of antidiscrimination statutes do not constitute protected whistleblowing under 5 U.S.C. § 2302(b)(8) or protected activity under section 2302(b)(9)(A)(i). *See Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 10-17, 21-25 (explaining that disclosures pertaining to matters covered by 5 U.S.C. § 2302(b)(1)(A), even if made outside of the grievance or EEO process, do not constitute protected whistleblowing activity under section 2302(b)(8) or section 2302(b)(9)(A)(i)), *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023). Furthermore, while we have considered that harassment by a supervisor may constitute an abuse of authority, *see Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 14 (2015), we find that the appellant's vague allegations of harassment do not rise to this level.[9]

---

[9] To the extent the appellant is alleging that the agency retaliated against her for protected disclosures made in her two prior Board appeals, we find that the Board lacks jurisdiction to address those allegations in this appeal. The appellant's 2013 appeal concerned a 7-day furlough issued by the agency, but the appellant did not allege in that appeal that the action was taken in retaliation for her whistleblowing. *Vaz v. Department of Housing and Urban Development*, MSPB Docket No. DA-0752-13-0450-I-1, Initial Appeal File, Tab 28 (Summary of Telephonic Prehearing Conference). Thus, a claim of retaliation for filing that prior appeal falls under 5 U.S.C. § 2302(b)(9)(A)(ii), since it was "other than with regard to remedying a violation" of section 2302(b)(8), and it is therefore outside the Board's jurisdiction in this case. *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013) (stating that the Whistleblower Protection Enhancement Act of 2012 extends IRA jurisdiction to claims arising under 5 U.S.C. § 2302(b)(9)(A)(i), but not section 2302(b)(9)(A)(ii)). The appellant did allege whistleblowing retaliation in her second appeal, but that appeal was filed on August 4, 2014, which was after the two personnel actions at issue in this case had already been taken and after the PIP had been extended. *Vaz v. Department of Housing and Urban Development*, MSPB Docket No. DA-3443-14-0579-I-1. Accordingly, the personnel actions could not have been taken in retaliation for her attempt to remedy whistleblower retaliation in that appeal. *See Orr v. Department of the Treasury*, 83 M.S.P.R. 117, 124 (1999) (holding that when the personnel action occurred before the protected disclosures the disclosures could not have been a

¶18     We find, however, that the appellant nonfrivolously alleged that she disclosed gross mismanagement by her supervisor regarding the office's oversight of the Harris County PHA. Accordingly, we find that this portion of disclosure (2) is protected under 5 U.S.C. § 2302(b)(8).

*Disclosure 3*

¶19     Regarding disclosure (3), the appellant asserts that on several occasions between September 2013 and March 2014, she notified an EEOC administrative judge of retaliatory harassment and violations of the ADA and other antidiscrimination laws. IAF, Tab 10 at 20-24, Tab 11, Tab 19 at 6. As noted above, such disclosures are not protected under section 2302(b)(8).

*Disclosure 4*

¶20     The appellant alleges that in a June 13, 2014 email to multiple agency officials, including the IG, the Chief Financial Officer, and agency counsel, she disclosed an abuse of authority, gross mismanagement, and violations of law and regulation including "multiple infractions of EEO laws, federal regulations, the negotiated Union contract, [and] HUD's core values." IAF, Tab 10 at 24-25, Tab 19 at 71. This email, titled "Multiple Violations of EEO laws, Federal laws," includes a copy of the appellant's rebuttal to the results of a management inquiry into her allegations of ongoing harassment by management. IAF, Tab 19 at 72-140. The attachment describes the appellant's concerns with the EEO process and includes documentation about her placement on a PIP, discussions about a reasonable accommodation, and alleged harassment by her former supervisor, including, among things, the appellant's allegation that her supervisor "pinched" his nipples around her. *Id.* The appellant also cites a February 5, 2014 email addressed to her second-line supervisor, who had proposed placing the

contributing factor in the action), *aff'd per curiam*, 232 F.3d 912 (Fed. Cir. 2000) (Table).

appellant on a PIP in a January 29, 2014 email, and the appellant's email was copied to the IG. IAF, Tab 10 at 24, Tab 19 at 71-72. In the February 5, 2014 email, the appellant contests the proposal to place her on a PIP based on the performance appraisal issued by her former supervisor, who had since left the agency. *Id*. Both emails are included in full in the appellant's submissions to OSC.[10] IAF, Tab 19 at 71-140.

¶21    As previously noted, the appellant's disclosures of alleged EEO violations are not protected under 5 U.S.C. § 2302(b)(8). Although the appellant alleges that she also disclosed violations of other laws, rules, or regulations, she has not identified any specific provisions. Nor do her allegations clearly implicate an identifiable law, rule, or regulation separate from her EEO claims. *See Baldwin v. Department of Veterans Affairs*, 113 M.S.P.R. 469, ¶ 12 (2010) (stating that the Whistleblower Protection Act does not require an employee to identify the particular statutory or regulatory provision that the agency allegedly violated when her statements and the circumstances of those statements clearly implicate an identifiable law, rule, or regulation). Furthermore, for the same reasons discussed above under disclosure (1), *supra* ¶ 15, we find that the appellant failed to make a nonfrivolous allegation that her February 5 and June 13, 2014 emails disclosed gross mismanagement or an abuse of authority by her former supervisor. Accordingly, we find that disclosure (4) is not protected under 5 U.S.C. § 2302(b)(8).

---

[10] In her response to the Board's first jurisdictional order, the appellant also describes two verbal communications with the IG in September 2014. IAF, Tab 10 at 25. However, the appellant did not refer to those communications in her OSC complaint or subsequent correspondence with OSC.

The appellant nonfrivolously alleged that her disclosure of gross mismanagement regarding the Harris County PHA was a contributing factor in her supervisor's issuance of an unfavorable performance appraisal.

¶22    The appellant alleges that her July 24, 2013 disclosure regarding her supervisor's alleged gross mismanagement of the Harris County PHA was a contributing factor in the issuance of a minimally satisfactory performance appraisal, which constitutes a personnel action under 5 U.S.C. § 2302(a)(2)(A)(viii).  One way an appellant may satisfy the contributing factor element at the jurisdictional stage is by making nonfrivolous allegations that the official taking the personnel action knew of the protected activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the activity was a contributing factor in the personnel action. *See* 5 U.S.C. § 1221(e)(1); *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 7 (2014).

¶23    Here, the appellant alleged before OSC that the agency attorney to whom she made the disclosure immediately shared the email with unspecified agency officials, and that her supervisor retaliated for that disclosure by giving her a minimally satisfactory performance appraisal for FY 2013.  IAF, Tab 19 at 67.  While the appellant did not specify the names of the agency officials with whom the agency attorney shared the July 24, 2013 email, her allegations would imply that the supervisor either received a copy of the email himself or else learned of it by other means.  The appellant further asserts that the supervisor, who has since left the agency, issued the appraisal in November 2013, approximately 4 months after the disclosure.  *Id.*  These events are close enough in time to support a conclusion that the disclosure was a contributing factor in the personnel action. *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 25 (2016) (observing that a personnel action that takes place within 2 years of a disclosure satisfies the knowledge component of the knowledge/timing test).  Accordingly, we find that the appellant is entitled to a hearing regarding her claim that the

agency issued her an unfavorable performance evaluation in retaliation for her protected disclosure.

Although disclosure (4) is not protected under section 2302(b)(8), the appellant's communications with the IG constitute protected activity under section 2302(b)(9)(C).

¶24      While we have found that the appellant did not make a nonfrivolous allegation that disclosure (4) was protected under 5 U.S.C. § 2302(b)(8), the record reflects that the February emails at issue were sent to the IG.  Under the broadly worded provision of 5 U.S.C. § 2302(b)(9)(C), disclosing information to an agency's IG or to OSC is protected regardless of the content of the appellant's complaints, as long as such disclosures are made "in accordance with applicable provisions of law."  Hence, we find that the appellant has made at least a nonfrivolous allegation that she engaged in protected activity for purposes of an IRA appeal.

The appellant nonfrivolously alleged that her protected activity was a contributing factor in her placement on a PIP.

¶25      We also find that the appellant nonfrivolously alleged that her communications with the IG were a contributing factor in a personnel action.  Specifically, the appellant alleged before OSC that the agency retaliated against her for those communications by placing her on a PIP.  IAF, Tab 19 at 9 (OSC complaint form).  In this regard, the record includes a screenshot of a March 27, 2014 email from the Acting Director of the Houston Field Office, notifying the appellant of her placement on a PIP.  IAF, Tab 40 at 118-19.  The screenshot shows that the PIP was attached to the email, but the PIP document does not appear to have been submitted to the Board by either party.  *Id.* at 118.  The appellant further asserts that on July 28, 2014, her second-line supervisor—who had first referenced the possibility of placing her on a PIP and who was also the recipient of the February 5, 2014 email discussed above—notified her that the PIP was being extended.  *See* IAF, Tab 10 at 9.  The agency submitted a copy of the

July 28, 2014 memorandum extending the PIP for an additional 60 days. IAF, Tab 8 at 55-64. Based on all of the above, we find that the appellant has made a nonfrivolous allegation that the agency placed her on a PIP on March 27, 2014. Moreover, it is well settled that a PIP is considered a personnel action for purposes of an IRA appeal. *See, e.g.*, *Hudson v. Department of Veterans Affairs*, 104 M.S.P.R. 283, ¶ 15 (2006).

¶26　　While it is unclear which official made the final decision to impose a PIP, the record indicates that the managers who received the February 5 and June 13 emails, which were also addressed to the IG, were involved either in implementing the PIP or considering the appellant's response after the possibility of placing the appellant on a PIP had been raised. IAF, Tab 19 at 71-73, Tab 40 at 118-19. Moreover, the March 27 and July 28, 2014 notifications regarding the PIP and its extension were both issued within a few weeks or months after the emails in question. Under these circumstances, we find that the appellant has a made a nonfrivolous allegation that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) that was a contributing factor in the agency's decision to place her on a PIP.[11] The appellant has therefore established jurisdiction and is entitled to a hearing on that claim.

---

[11] The appellant is also alleging that the agency repeatedly threatened to place her on a PIP, including in a January 29, 2014 email and during a conference call held on the same date. IAF, Tab 1 at 4-5, 15-17, 50-52. To the extent she is claiming that communications regarding placing her on a PIP constituted threatened personnel actions, from our review of the record we find that she has failed to make a nonfrivolous allegation that any agency statements in this regard rose to the level of threats to take personnel actions, as defined in 5 U.S.C. § 2302(a)(2). Further, while the appellant questions whether the March 27, 2014 PIP was ever implemented, it appears that she may actually be arguing that the agency violated various procedures when it notified her of the PIP, and that this casts doubt on the validity of the action. IAF, Tab 10 at 8-10; IAF, Tab 40 at 117-19. On remand, the administrative judge should determine if there is a dispute regarding whether the PIP ever went into effect, and if so, he should accept evidence and argument on the issue and make findings as necessary.

<u>The appellant has nonfrivolously alleged that her July 24, 2013 disclosure was a contributing factor in her placement on the March 27, 2014 PIP.</u>

¶27    As discussed above, we have found that the appellant made a nonfrivolous allegation that the supervisor who gave her the minimally satisfactory performance appraisal for FY 2013 either received a copy of the appellant's July 24, 2013 email (disclosure 2) or otherwise learned of the email.  The appellant admits that the supervisor who gave her that appraisal was no longer a Federal employee as of January 6, 2014; however, she asserts that her second-line supervisor and the Acting Director of the Houston Field Office used the appraisal to put her on the PIP.  IAF, Tab 19 at 9.  Record evidence supports her contention, as the Acting Director sent the March 27, 2014 email notifying the appellant that she was being placed on a PIP, he attached a copy of her final FY 13 performance rating along with the PIP, and he stated that the PIP was "required as a result of your marginally successful rating."  IAF, Tab 40 at 118.

¶28    Even assuming the individuals who placed the appellant on the PIP were unaware of the appellant's July 24, 2013 disclosure, because we have found that the appellant made a nonfrivolous allegation that this disclosure was a contributing factor in the FY 13 performance appraisal and the appraisal led directly to the appellant being placed on a PIP approximately 8 months later, we find that the appellant has made a nonfrivolous allegation that the disclosure was a contributing factor in the PIP.  *See Marano v. Department of Justice*, 2 F.3d 1137, 1143 (Fed. Cir.1993) (finding that the contributing factor standard is met if an employee can demonstrate "that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect in any way the personnel action").

<u>Conclusion</u>

¶29    We find that the appellant has made nonfrivolous allegations that the part of the July 24, 2013 email regarding her supervisor's alleged gross mismanagement concerning the Harris County PHA was a protected disclosure and was a

contributing factor in the FY 13 performance appraisal and the March 27, 2014 PIP, and she has further nonfrivolously alleged that the February 5 and June 13, 2014 emails to the OIG were protected activity and were a contributing factor in the PIP.

## ORDER

¶30     For the reasons discussed above, we remand this case to the Dallas Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                                 /s/ for
                                            _____
                                            Jennifer Everling
                                            Acting Clerk of the Board

Washington, D.C.